McCoy v. Key et al.

(Division A. Oct. 7, 1929. Suggestion of Error Overruled November 18, 1929.)

[123 So. 873. No. 27912.]

L. P. **Spinks**, of De Kalb, and **Martin V. B. Miller**, of Meridian, for appellant.

J. A. Covington, Jr., of Meridian, J. M. Stevens, and Wells, Jones, Wells & Lipscomb, all of Jackson, and Jno. A. Clark, of De Kalb, for appellees.

Argued orally by **L. P. Spinks**, for appellant, and by
**J. M. Stevens** and **W. E. Stone**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, McCoy, brought his action for damages against S. W. Key, C. M. Gulley, sheriff, and the United States Fidelity & Guaranty Company and the Mississippi Fire Insurance Company, as sureties on the sheriff's bond. The declaration alleged that Key was a deputy sheriff of Gulley, the sheriff, and that he unlawfully shot McCoy while exercising the duties and functions of a deputy sheriff. At the conclusion of the plaintiff's testimony, the court peremptorily instructed the jury to return a verdict for Gully, the sheriff, and the sureties on his bond.

The court further submitted the question of the liability of Key for the wrongful shooting of McCoy to the

jury, and the jury returned a verdict for the plaintiff, McCoy, in the sum of eighty-five dollars.

In the instructions given for the defendant Key, the court instructed the jury that the sheriff, Gulley, and the sureties on his bond, had been "eliminated" from the case, and that it could consider only the liability vel non of Key.

McCoy was shot through what is denominated in the record as the "Adam's Apple," in the front of his neck, the bullet coming out a little lower in the rear, passing through his neck or throat, and as a result of which he was confined in a hospital for some weeks. He testified that he suffered considerable pain. The amount of the verdict was the amount testified to by McCoy as having been expended by him for doctor's bills and hospital fees. Such other facts as are deemed necessary will be stated in connection with the points decided.

The appeal here is prosecuted by McCoy, plaintiff in the court below.

Taking the assignments of error as grouped by the appellant, we find that he complains, first, that the ruling of the court in excluding the testimony tending to show that appellee Key was a deputy sheriff at the time he shot appellant, and the granting to appellee Gulley and his bondsmen a peremptory instruction was error. It was in evidence that witnesses had seen Key acting as deputy sheriff a number of times; that he had been seen investigating cars and the tags thereon with reference to whether they were new or old tags; that this was about March, 1926, the shooting having occurred on September 23, 1926; and that frequently he would be seen "investigating car after car." It was also testified that the general understanding in that community was that Key was a deputy sheriff, and that he had been seen to go on raids with posses hunting liquor stills. Another witness testified that, after cer-

tain parties had been arrested by Key, Sheriff Gulley was asked by the complaining parties what right Key had to take a pistol from them, and that he replied that Key was a deputy and therefore had the right to make the arrest—these questions having been asked the sheriff some three weeks before the shooting.

The appellant also offered to prove by five witnesses, present at the preliminary trial of Key, who was being tried for the shooting of McCoy in a criminal court, that the sheriff was placed on the witness stand- and there testified that he had appointed Key as a deputy to make arrests in the town of De Kalb, and that, at the time McCoy was shot by Key, Key was acting as his deputy, that Key was appointed in writing, and that he could produce the writing.

It was contended by Key that he was undertaking to arrest McCoy for being drunk in a public place and for using profane language; that he was making the arrest, not as a deputy sheriff, but as a night watchman or policeman of the town of De Kalb, having been employed as night watchman by certain citizens of the town. It was shown that the mayor of the town undertook to confer upon him the authority to carry a pistol, but it is also clearly shown that prior to the shooting no authority had been vested in him by the mayor and board of aldermen, as provided by statute.

The court held that the evidence which we have set forth did not show or tend to show that at the time of the shooting Key was a deputy sheriff de facto or de jure, and excluded the evidence as to the sheriff and his sureties. This ruling of the court we think was erroneous. The admissions of the sheriff, which we have detailed above, did not go to the extent of making him a general deputy sheriff, but was admitted to show that Key was authorized, in writing, to make arrests in the town of De Kalb, and these admissions of the sheriff were

certainly admissible against him as being declarations against interest. It is true the evidence of the sheriff was given in another trial, but it was ·delivered at a time when the sheriff knew the situation; and, if the appointment was especially for making arrests in the town of De Kalb, although it was in writing, there is no provision under our statute for the preservation of the writing. Under section 3286, Hemingway's 1927 Code (section 4664, Code 1906.), it is provided that the appointment of the regular deputies shall be by the sheriff in writing, and such appointment shall be filed with the clerk of the board of supervisors. The contention of counsel for the appellees, the sheriff and his sureties, seemed to be that the sheriff's admission was that the appointment of Key, in writing, was as a regular deputy as distinguished from a special deputy. In this we think they are in error.

Counsel further contend that if Key was appointed as a regular deputy, the law required the appointment to be in writing, and that oral statements of the sheriff are inadmissible—the best evidence rule in fact is invoked. As we have stated the facts, and as we view this record, the best evidence rule is not involved here, but the rule applicable is that declarations of a party against his interest made out of court, or in any other court, are admissible against one where such admissions are against his interest; the theory of the law being that a man will not make an untrue statement against his interest. We do not deem it necessary to cite authorities to sustain this proposition, as they are too numerous.

The contention that Key was acting as a night watchman is untenable, because it is not shown that there was ever any effort to comply with the law in appointing him night watchman; his wages for·discharging his duties coming from private citizens and not from the pub-

lic municipal treasury. The mayor and board of aldermen had not elected him to any official position, nor is it shown that the town of De Kalb had passed any ordinances as to criminal offenses. No ordinances are shown authorizing any arrest by a private night watchman in this case.

The main contention of counsel for appellant seems to be that the admission of the sheriff made in the trial of the criminal case, that Key was a deputy sheriff, is not admissible against his sureties, because the admission is not a part of the res gestæ. In other words, counsel seems to contend that, if the sheriff had been present at the shooting and had declared that Key was his deputy, such admission would be allowable, and only in such case. It is quite a different thing to undertake to prove the ultimate fact upon which liability rests by the admission of the principal or the wrongful act or the failure to act as distinguished from the evidence of circumstances which tend to prove the acts of a de facto officer. While such evidence is not conclusive, it does make a prima facie case as to the sheriff and his sureties.

In 10 Encyclopædia of Evidence, p. 62, sub-sec. (c), we find this statement: "In some jurisdictions, when principal and surety are jointly sued on a joint, or a joint and several obligation, any admission or declaration made by the principal, which is competent evidence against him, is also competent against the surety."

Among other cases cited is the case of Montgomery v. Dillingham, 3 Smedes & M. p. 647, in which case Chief Justice SHARKEY announced the rule above set forth, and it is stated in the syllabus in this language: "The admission of a joint maker of a note is evidence against his co-makers in a suit against them all, especially where there is no severance in pleading."

In Hemingway's 1927 Code, section 3285 (Code 1906, section 4663), it is provided that the remedy upon the sheriff's bond shall be joint and several, and, further, that, where the sheriff is a party to the suit, his liability does not first have to be fixed. See, also, Johnson v. Jones, 13 Smedes & M. 582, and Atkinson v. Foxworth, 53 Miss. 749.

The admission of the sheriff, by his sworn statement, according to the evidence offered, was that Key was the deputy sheriff impliedly instructed to make the arrest being inquired into.

"The testimony given by a party at one trial of a case may be used against him as an admission on a subsequent trial. So also testimony given by a party on a trial of one case is competent against him as an admission on the subsequent trial of another action, whether he was a party to such former action or a witness therein, and even though the testimony was given under compulsion process, or in another state." 22 C. J. 343, par. 391.

It is generally the rule that whatever a party voluntarily admits to be true, though the admission is contrary to his interest, may reasonably be taken for the truth, provided that the statement is a disserving one.

"As a general rule evidence that a person acted as deputy sheriff or constable and was reputed to be and recognized as such is admissible and sufficient to prove his official character. . . . In an action against a sheriff for the default or misconduct of a person alleged to have been his deputy the fact that the sheriff appointed such person his deputy, or an admission by the sheriff that such was his deputy, is sufficient proof of the deputation." 35 Cyc. 1522.

In Dean v. Brannon, 139 Miss. 312, 104 So. 173, 175, this court held that the sheriff and the sureties on his bond are liable for the acts of de facto deputies as

much as if the deputies had been regularly appointed in writing as provided by the Code, section quoted supra; the statute not being the source of all the sheriff's power.

There is quite a difference between the admissions of the deputy as against the sheriff and the sheriff's admissions as to his appointment of the deputy, and this is true whether the appointment be in compliance with the statute or in virtue of his general powers under the common law as sheriff of the county.

We are of opinion that the refusal to permit the admissions of the sheriff and the other evidence tending to show that Key was a de facto deputy sheriff was fatal error, on account of which this case must be reversed and remanded.

Second. As there is to be another trial of this case, we will pass upon another point urged by the appellant, in which we think there is no error. It is contended that the court erred in not permitting the defendant to offer evidence that McCoy was riding in a car accompanied by a negro woman on the same night, some two or three hours before this shooting took place, and that he was accompanied by the negro woman at the time he was shot. And it was further contended that the court erred in permitting the witnesses to testify to disorderly conduct at about ten o'clock that night at Macedonia Church, where he was said to have been drinking liquor and choking a negro woman, the same woman he was riding with in the streets of De Kalb, and who was in the car by which McCoy was standing at the time he was shot by Key. Counsel for appellant earnestly insist that this evidence was very damaging because it injected the race question. In this we do not concur. The injection of the race question was incidental; the negro woman was at the scene of the shooting, and, according to Key's evidence, he was under-

taking to arrest McCoy for the crime of drunkenness in a public place in the presence of two or more witnesses. He (Key) and his witnesses said that the negro woman was there and that McCoy was drunk. We think it was permissible for the appellee to show that McCoy was at the church a short time before the shooting, and to show that he was there drinking whisky, and that his conduct was disorderly—all this tending to corroborate his statement that McCoy was drunk. Disorderly conduct is generally one of the characteristics of drunkenness. A man does not usually become drunk suddenly; it is a progressive process. All this testimony tended to corroborate the officer's theory that he was drunk in the presence of two or more witnesses in a public place.

Third. As the case must be tried de novo, we do not think it would be proper to examine the instructions given and refused complainants, as the whole case against all the defendants in the court below must be tried anew, and for this reason we pretermit any discussion of the amount of the verdict.

We are of opinion that the appellant, who was the plaintiff in the court below, was prejudiced when he was not permitted by the court to submit his whole case at one time against the parties defendant, and that substantial justice requires that we shall generally reverse and remand the case in order that the whole case may be tried at one time, and the issues disposed of finally.

Reversed and remanded.