Berry, et ux. *v.* Brunt

No. 43378          February 22, 1965          172 So. 2d 398

*Nat G. Troutt,* Senatobia, for appellants.

*McClure, Fant & McClure,* Sardis, for appellee.

RODGERS, J.

This suit originated in the Circuit Court of Tate County, Mississippi. Appellants brought suit against appellee for damages caused by fire to young timber on their lands, alleged to have been started or set out by appellee and carelessly permitted to spread to their lands. When plaintiffs had concluded the introduction of their testimony and proof to sustain the charge of negligence against defendant, he moved the court to grant a peremptory instruction to the jury in favor of defendant based upon the ground that the evidence offered was insufficient to sustain the charge of negligence set out in the declaration. The court sustained the motion and directed a verdict in favor of defendant and entered a judgment. Appellants earnestly insist upon appeal to

this Court that, the trial court erred in granting a directed verdict because it is said the inferences to be drawn from the testimony offered by the plaintiffs in the trial court, coupled with the acts and conduct of the defendant were sufficient to establish the allegations of the declaration. A synopsis of the testimony offered shows that on March 23, 1963, an employee of the Mississippi Forestry Commission was on duty in a fire tower in Tate County, Mississippi, and he saw smoke arising from three small fires in Panola County about 11:15 A. M., at or near the home of R. H. Martin. The fires were about two and a half or three miles from the tower. By the use of binoculars, the witness observed someone using a tractor near the fires, but this was sometime after he had first observed the smoke. Defendant was plowing with a tractor about a mile from the fires and at the time he saw the smoke, he went to the fires and plowed fire lanes around them, but the fires jumped the fire lanes. The tractor became inoperative and he obtained help of Arthur Lee Miller, who was plowing with a tractor and disk attachments in a nearby field. Defendant sent his wife to the fire tower to notify the employees of the Mississippi Forestry Commission on duty, in an effort to solicit their help to put out the fire. The fire was not extinguished until it had burned over the land of appellants and had caused an estimated damage and destruction of 52,275 seedlings valued at $5,280.

Several days after the fire, Mr. James Kittrell, law enforcement investigator for the Mississippi Forestry Commission, visited the area of the fire. He testified as an expert witness as to where the fire started. He then went to the school where the defendant taught and advised him "that since he had allowed the fire to escape that he was responsible for the cost of suppressing that fire." The witness was asked the following questions and gave the following answers:

Q. "Would you state that conversation you had with Bemis Brunt in his presence concerning the fire?

A. "After I investigated the fire, I immediately went to the school where Bemis taught, and I asked the Superintendent of the school if I could see Bemis, and he said that I could. He told me where he was, and I went to see Bemis there in the schoolhouse. When I saw Bemis, I told him that I wanted to talk with him for a minute. He was in the hall, and I asked him if they had a place that was private where we could talk, and he said, 'surely.' He opened a door to a classroom, and we went in the classroom, and I handed him the cost for suppressing this fire which Mr. Lambert had prepared, and I told him that since he had allowed the fire to escape that he was responsible for the cost of suppressing that fire.

Q. "What did he say in response to that?

A. "He said that he hadn't let the fire escape, that actually he was a mile away from there when the fire had escaped.

Q. "What else was said by either one of you then?

A. "I told Bemis that I didn't know whether he was there or not, because I wasn't, but somebody, either he or one of his workers, had burned that field off and therefore he was responsible for it whether he set it or whether one of his workers set it.

Q. "What did he say when you said that if anything?

A. "He asked me did I have a check. . . .

Q. "Did you have any further conversation about the fire, Mr. Kittrell?

A. "Yes, sir, we did, at the service station where Bemis paid the money, I gave him a receipt for the money; and I told Bemis on the way back to the school that he had a pretty good fire lane in that field; and I told him that he shouldn't set a fire on a high fire index day like that particular day was; that he should

burn immediately after a rain. I told him that the next time he got ready to burn, that if he would disk a fire lane like that one he had only make it a little wider, and then move over about thirty feet and make another one, and wait until late some afternoon and burn out between them, then this fire would be safe behind the fire lane.

Q. "What did he say to that, if anything?

A. "He said that he had never thought of it."

On cross-examination, this witness said:

Q. "Mr. Kittrell, throughout your conversation with Bemis Brunt, I believe, he had denied all the way through that he knew anything about how that fire got started, is that not correct?

A. "He told me that he was a mile away when that fire started.

Q. "And that he didn't have anything to do with starting it, isn't that what he told you?

A. "I believe he did say that he didn't have a thing to do with starting that fire, because he was a mile away."

■■ ■ It is pointed out on appeal that the rule to be applied in determing whether or not a party is entitled to a directed verdict is that the court must look solely to the testimony offered on behalf of the party against whom the directed verdict is requested — and taking that testimony as true, along with all of the reasonable inferences which could be drawn therefrom favorable to said party — if such evidence could support a verdict for him, the directed verdice should not be given against him. We agree that this rule is well-established in this State. West v. Armstrong, 248 Miss. 617, 159 So. 2d 805 (1964); Hawkins v. Hillman, 245 Miss. 385, 149 So. 2d 17 (1963); Associates Discount Corp. v. McDade, 248 Miss. 270, 158 So. 2d 57 (1963); New Orleans & Northeastern R. Co. v. Thornton, 247 Miss. 616, 156 So. 2d 598 (1963); Luther McGill, Inc.

v. Clark, 244 Miss. 707, 146 So. 2d 338 (1962); Williamson v. Inzer, 239 Miss. 707, 125 So. 2d 77 (1960); Williamson v. F. W. Woolworth Co., 237 Miss. 141, 112 So. 2d 529 (1959). The question to be determined here is, after applying the foregoing rule in the trial court, was the evidence sufficient to show that defendant was negligent so as to require an issue to be submitted to the jury?

As a general rule, in order to establish an allegation of negligence based upon circumstances, inferences and acts of a defendant in the nature of admissions, the proof or circumstances shown must be such that they will take the case out of the realm of conjecture and place it within the field of a legitimate inference of liability. Alexander Pool Co. v. Pevey, 247 Miss. 389, 152 So. 2d 451 (1963); Brunt v. Chicago Mill & Lbr. Co., 243 Miss. 607, 139 So. 2d 380 (1962); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So. 2d 226 (1962); Denman v. Denman, 242 Miss. 59, 134 So. 2d 457 (1961); Magnolia Petroleum Co. v. Stinson, 230 Miss. 533, 93 So. 2d 815 (1957); Tombigbee Electric Power Ass'n v. Gandy, 216 Miss. 444, 62 So. 2d 567 (1953); Johnston v. Canton Flying Service, Inc., 209 Miss. 226, 46 So. 2d 533 (1950).

In the case of Brown Oil Tools, Inc. v. Schmidt, 246 Miss. 238, 148 So. 2d 685 (1963), we quoted from 38 Am. Jur. *Negligence* § 334 (1941) wherein it was said:

". . . proximate cause need not be established by the testimony of eyewitnesses, nor by direct or positive evidence, but may be proved by circumstantial evidence; it may be determined from the circumstances of the case. . . . In view of the fact that the burden of proof is on the plaintiff, such circumstances must be ample and must appear from the evidence. Moreover, the evidence must not leave the causal connection a matter of conjecture; it must be something more than consistent with plaintiff's theory as to how the accident occurred."

The textwriter in 65 C. J. S. Negligence § 244 (1950), with reference to damages caused by fires, said:

"In an action to recover damages alleged to have resulted from defendant's negligence in starting, feeding, controlling, or communicating a fire, a preponderance of the evidence is necessary to establish that defendant originated, caused or communicated the fire. Direct evidence is not essential to establish the origin or cause of the fire, and the proof may be circumstantial. The law does not require demonstration, or an absolute certainty, or proof beyond a reasonable doubt. It is not necessary to exclude every reasonable possible cause, but it is sufficient to establish by a fair preponderance that the fire was originated, caused, or communicated by defendant. If circumstances proved are inconsistent with any theory other than that defendant or his negligence was responsible for the fire and there is an absence of evidence tending to point to any other agency causing it, the jury may be warranted in finding for the plaintiff. On the other hand, the origin or cause of the fire may not rest on surmise, conjecture, or speculation."

In the case of McCain v. Wade, 181 Miss. 664, 180 So. 748 (1938), in which defendant was sued for damages alleged to have been caused by the defendant's employees in setting out fire, the Court said:

"At the close of plaintiff's evidence the court sustained a motion to exclude it, and thereupon gave judgment for the defendant. Appellant insists that there was enough in the evidence to require its submission to the jury, invoking the familiar rule that in excluding the evidence of a party litigant everything in that evidence, and every reasonable inference to be drawn therefrom, in favor of said party, must be taken as truthful proof in his behalf. But in this class of cases, as in other actions of tort, the plaintiff must show with fair or reasonable certainty or def-

initeness that the party charged is the party actually responsible for the wrong. It is not enough that this shall be left to conjecture or to inferences so loose as that it cannot be dependably told where conjecture ceases and cogent inference begins."

It is argued by appellants, however, that "the acts and conduct of appellee during and as a result of his conversation with the Mississippi Forestry Commission officials constituted admissions by the appellee to the setting of the fire." The appellee then cites 31A C. J. S. *Evidence* § 291 (1964) wherein it is said: "An admission may be made by conduct as well as orally or in writing. Thus, as a general rule, any act or conduct on the part of a party which may fairly be interpreted as an admission against interest on a material issue may be shown in evidence against him." Appellants also cite the cases of Reynolds v. McGehee, 220 Miss. 750, 71 So. 2d 780 (1954); McCoy v. Key, 155 Miss. 64, 123 So. 873 (1929) and Williamson v. Inzer, *supra,* wherein it is said that the court permitted the case to go to the jury on admissions of the defendant.

Assuming, without deciding, that the payment of the claim of a third party arising from the same transaction or incident as the plaintiff's claim is admissible in evidence, and assuming that such act of payment is in the nature of an admission that defendant owed an obligation to the third party (Annot. 20 A. L. R. 2d 304; 20 Am. Jur. *Evidence* § 562) the payment to the Mississippi Forestry Commission for the suppression of the fire, in the instant case, is not sufficient to create an inference that the defendant was responsible for starting the fire alleged to have caused the damage to the seedlings belonging to appellants.

The positive testimony shows that defendant was a mile from where the fire started and had nothing to do with starting it; nevertheless, the agents of the Mississippi Forestry Commission told him he was liable

for the suppression of the fire. If there is any adverse inference to be drawn from the admitted payment and the other evidence, it is very slight, and is insufficient to sustain the burden of proof required of a plaintiff in a tort action. At most, all of the testimony introduced by appellants raises only a conjecture that defendant might have been responsible in some manner for the damage caused by the fire.

The Court has repeatedly held that in trials under the common law, to prove a "possibility" only, or to leave the issue to surmise and conjecture, is never sufficient to sustain a verdict in a tort action. A mere scintilla of evidence of negligence is insufficient to make a jury issue. The scintilla rule of evidence is not recognized in this State. Brown Oil Tools, Inc. v. Schmidt, 246 Miss. 238, 148 So. 2d 685 (1963); Illinois Central R. Co. v. Crawford, 244 Miss. 300, 143 So. 2d 427 (1962); Equitable Life Assur. Soc. of United States v. Mitchell, 201 Miss. 696, 29 So. 2d 88 (1947); Southern Ry. Co. v. Buse, 187 Miss. 752, 193 So. 918 (1940); Mutual Ben. Health & Accident Ass'n v. Johnson, 186 So. 297 (Miss. 1939); Yazoo & M. V. R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50 (1937), suggestion of error 178 So. 80 (1938); Columbus & G. R. Co. v. Coleman, 172 Miss. 514, 160 So. 277 (1935).

We are now therefore of the opinion that the trial court acted properly in directing a verdict and entering a judgment in favor of appellee.

Affirmed.

*Kyle, P. J., and Gillespie, Brady and Inzer, JJ.,* concur.