194 So.2d 217 (1967)
Mrs. Lucy HOLLIE
v.
SUNFLOWER STORES, INC.
No. 44214.
Supreme Court of Mississippi.
January 23, 1967.
Fountain D. Dawson, Greenville, Crisler, Crisler & Bowling, Jackson, for appellant.
Lake, Tindall, Davison & McGee, Greenville, for appellee.
JONES, Justice.
This is another "slip and fall" case. It comes from the Circuit Court of Washington County, where a verdict for $1,000 in favor of appellant was rendered by the jury. Judgment was entered thereon. Appellee filed a motion for judgment notwithstanding the verdict, and appellant filed a motion for a new trial on the question of damages only.
From an order of the Circuit Judge sustaining appellee's motion for judgment notwithstanding the verdict and overruling appellant's motion, this appeal comes to this Court. We affirm the case.
We deem it only necessary to consider one assignment of error, to-wit: That the *218 court erred in sustaining the motion for judgment notwithstanding the verdict. A motion for a peremptory instruction had been overruled, and a request for a peremptory instruction at the conclusion of the evidence had been refused.
When a court sustains a motion for judgment notwithstanding the verdict such action has the same effect as a directed verdict and the same rules as to the scope of our review apply. The evidence must be treated as proving every fact favorable to the plaintiff's case which is shown either directly or by reasonable inference. Agregaard v. Duncan, 252 Miss. 454, 173 So.2d 416 (1965); Moore v. Winn-Dixie Stores, Inc., 252 Miss. 693, 173 So.2d 603 (1965).
Appellant testified the accident happened at about 1:00 p.m. on a Monday. According to the record, the date was June 29, 1964. The appellant, who lived near Hollandale, had come to Greenville with her husband, two of her grandchildren, and a blind daughter. The purpose of the trip was for her husband to secure an unemployment check. When they arrived at Greenville, they parked their car under a shade tree somewhere in the vicinity of the Sunflower Store. Her husband left for the unemployment office. Appellant and her two granddaughters went to the Sunflower Store; the blind daughter remained in the car. Appellant desired to purchase food for lunch to be eaten in the car. She entered appellee's front door, turned right, obtained a cart, and went down the produce counter and down the meat counter. She picked up tomatoes, a loaf of bread, some cheese, a package of meat and a box of milk. As they walked parallel to the meat counter, appellant was reminded by one of the girls that she desired some pine oil. Appellant turned left from the meat counter to look for the pine oil, made about two or three steps when she slipped and fell, throwing her arm back in an effort to catch herself. The impact broke her arm. Appellant testified that she slipped on a "stripping" out of a banana peeling on the floor. The stripping she says was what was on the inside of a banana. Sometimes it stays on the peel and other times it sticks to the banana itself. She said that every time she peels a banana she pulls the little stripping off. She did not see the stripping prior to the fall, but after she fell and was helped to her feet by her older granddaughter, she looked and saw the stripping on the floor where her foot had slipped on it. Her heel made a black mark on the floor, which mark was a foot long. Appellant couldn't say how it was lying on the floor before she stepped on it, but after she had fallen and arose, it was all "smushed" up, just like a wad. She said the material on the floor was "real" dark. Appellant was asked what color that part of the banana peeling was when first peeled off of a banana and she said, "It is about the color of a banana." She testified she had had quite a bit of experience in peeling and using bananas because she had many children and grandchildren and every time one of them came home he or she had to have banana pudding. Based on this experience, she testified, presumably as an expert, it would take a banana peeling about three or four hours after it was peeled to reach the color of the stripping. When she fell, help came and she was carried to the hospital.
On cross-examination, appellant repeated that she came into the front door, turned to the right, obtained a cart, continued to the right of the entrance door to the far wall, then turned left, went down an aisle on the far side and reached the back of the store where she turned left in front of the meat counter. The place she fell was in a wide space in front of the meat counter. When asked about a stripping from a banana, she said it was not the peeling; it was the stripping between the peel and the banana. The normal length of one would be the length of a banana. She thinks it would be about one-sixteenth of an inch wide. So far as she knows, no one picked it up. Each of her granddaughters saw it after she fell, *219 but neither picked it up. On cross-examination, appellant was asked:
"Q. Now was there anything else on the floor in the store anywhere that you saw?
A. No.
Q. You didn't see anything else  trash or anything of the kind?
A. No, sir.
Q. The floor was clean, was it not?
A. After I had fell, I didn't look no more  I just went right on out.
Q. I know, but you walked in the store all the way from the front to the back 
A. All the way from the front to the back  I didn't see anything else on the floor, huh-uh."
The two granddaughters corroborated their grandmother as to the slipping and falling. Neither of them saw the stripping on the floor prior to the accident. The record shows nobody did.
Appellant called Mr. Max Mitchell, the manager of appellee, as an adverse witness. He had been in the grocery business practically all of his life. There were a number of employees in the store  he would say approximately twelve working on the day of the accident. There was one boy at the front, plus three stock men to take care of the floor all of the time, as a general routine.
As far as sweeping is concerned that would be done approximately three times a day. They had had a complete cleaning procedure on the Saturday night before. It took four men working three hours to do the cleaning.
Mr. Mitchell detailed the method of handling the produce, groceries and the cleaning of the floors. He stated that he passed by this place not more than thirty minutes before the accident, and probably three, four, or five times before that, and saw nothing on the floor; that he continually patrolled the store. The pictures which were introduced into evidence show the store to be a large one.
The only evidence is that there was a little stripping about the length of a banana, and perhaps one-sixteenth of an inch in width on the floor. Whether it was dark or white before the lady slipped on it is not known because nobody saw it before she fell. The balance of the floor of the store was clean. The manager had been by there not more than thirty minutes before and had seen nothing. It is argued that since the stripping had turned dark and appellant testified it would take three of four hours for a peel to turn such a color, there is proof it had been there for some length of time. However, whether it turned black when she slipped on it, or whether it was black when it was on the floor before she stepped on it was not shown.
Appellant relies heavily upon the case of Moore v. Winn-Dixie Stores, Inc., supra.
It is said that case is authority for holding that negligence of the defendant is sufficiently shown here to make a jury question. The facts in the Moore case were vastly different from those here. The Moore case well states the law of such cases, but the facts shown by the plaintiff (Mrs. Moore) were, as reported on page 604 of the Southern Reporter,
"* * * She then said: `Well, after they picked me up and put me in the chair, Mr. Rawls and my husband, after I saw what it was then, it was a banana peeling. I didn't know what it was. They put me in the chair, and the other lady who was wiping my face with a wet towel, said "Mr. Rawls, there's some grape seed down here." It was mashed like a hundred horses had went across it. I said "You better get this up before someone else falls." And he did, I can't remember whether he did, I was almost out, but somebody else did, they cleaned it all up with a towel, they didn't get a mop. *220 The banana peeling and all was mashed like horses had been running across it.' She testified at another time describing the area in the aisle where she fell: `Yes, sir, the whole area, I would say four or five feet, it was all over the floor. I can't say how it was there. All I can say is that it was mashed like it had been here a long, long time.' Both Mr. and Mrs. Moore testified that the banana peel was black in color, and Mr. Moore testified: `Yes, there was a little place around there that looked like it was kinda black looking and soiled up, you know.' He also said: `It was black looking. And the banana peeling, looked like one piece was laying this way, and one this way. I don't know, it must have been there a little while, I don't know how long.' He continued by testifying: `It was mashed up there, where she slipped on it.'" 252 Miss. at 696-697, 173 So.2d at 604.
Compare this four or five-foot spot with a small thing the length of a banana, and one-sixteenth of an inch in width.
As far as requiring three or four hours for a banana peeling to turn dark, it is shown in the first place that this is not the peeling; it is the strip on the inside between the peeling and the banana. Nobody saw it and could say what the color was prior to the time appellant slipped on it, and it was all in a small wad after the fall. It could have been that it was made dark by the slipping. There is no evidence that anybody connected with the store deposited it there, or knew of its being there. Attempt is made to charge appellee with notice on the ground that it had been there for such a length of time as to charge it with notice. It is interesting to note the following comment in the Moore case, supra, beginning on page 607, where the case of Zerbe v. City of Springfield, Ohio App., 60 N.E.2d 793, 38 Ohio Law Abst. 487 (1943) is distinguished from the Moore case:
"The appellees have cited several cases from other states in which appellate courts have held that the foreign substance, found on the floor after the accident, is not sufficient as a matter of law to show that it had been on the floor long enough for the personnel of the store, in the exercise of reasonable care to discover it.
"Zerbe v. City of Springfield, Ohio App., 60 N.E.2d 793, 38 Ohio Law Abst. 487 (1943), is a typical example of these cases. In that case, where the plaintiff and her daughter testified that the banana skin was black, and therefore old, and flattened out as though somebody had stepped on it and had grime on the floor embedded in it, the Court stated: `It is our conclusion that there is absolute absence of evidence supporting the claim that the banana peel was on the floor a sufficient length of time to constitute constructive notice to the defendant.'
"We are of the opinion, however, these cases are not controlling in the case at bar because there is more evidence here than a mere description of the color of the banana peel. In the instant case, the aisle was soiled around the place where the appellee fell, and the explanation made by the store manager that a baby in a grocery cart might have been eating grapes and dropped the seeds or a banana peel might not have been acceptable to the jury. * * *" 252 Miss. at 704, 173 So.2d at 607-608.
A statement in the case of Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916 (Miss. 1966), would be entirely applicable here if the word "stripping" was substituted for "gum ball":
"There is neither direct or circumstantial evidence that the gum ball had been on the floor for such a length of time that in the exercise of reasonable care, the store manager or his employees should have known it." 185 So.2d at 918.
There was testimony by the granddaughters that when they returned to the store after going with their grandmother to the hospital the place where she fell had been mopped. This was disputed by the *221 manager. However, conceding, as must be done in consideration of this evidence, that the stripping was on the floor, the evidence is insufficient to charge the appellee with notice thereof, and there is no evidence from which it might be inferred that any employee of appellee placed or dropped it there.
The appellant had the burden of establishing either actual or constructive notice to the appellee, and this she failed to do. As was said in the case of Berry v. Brunt, 252 Miss. 194, 172 So.2d 398 (1965):
"The Court has repeatedly held that in trials under the common law, to prove a `possibility' only, or to leave the issue to surmise and conjecture, is never sufficient to sustain a verdict in a tort action. A mere scintilla of evidence of negligence is insufficient to make a jury issue. The scintilla rule of evidence is not recognized in this State. Brown Oil Tools, Inc. v. Schmidt, 246 Miss. 238, 148 So.2d 685 (1963); Illinois Central R. Co. v. Crawford, 244 Miss. 300, 140 So.2d 90, 143 So.2d 427 (1962); Equitable Life Assur. Soc. of United States v. Mitchell, 201 Miss. 696, 29 So.2d 88 (1947); Southern Ry. Co. v. Buse, 187 Miss. 752, 193 So. 918 (1940); Mutual Ben. Health & Accident Ass'n v. Johnson, 186 So. 297 (Miss. 1939); Yazoo & M.V.R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50 (1937), suggestion of error 178 So. 80 (1938); Columbus & G.R. Co. v. Coleman, 172 Miss. 514, 160 So. 277 (1935)." 252 Miss. at 203, 172 So.2d at 402.
We find that the lower court was correct in sustaining the motion for a judgment notwithstanding the verdict.
The case is affirmed.
Affirmed.
ETHRIDGE, C.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.