# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01448-SCT

*WILLIAM H. "SKIP" SMITH, JR.,*
*INDIVIDUALLY AND ON BEHALF OF THE*
*WRONGFUL DEATH BENEFICIARIES OF*
*CAROLYN SMITH, DECEASED, AND THE*
*ESTATE OF CAROLYN SMITH*

*v.*

*HARDY WILSON MEMORIAL HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2018 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WILLIAM C. GRIFFIN |
| ATTORNEYS FOR APPELLEE: | GAYE NELL CURRIE |
| | D. JASON CHILDRESS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 08/20/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     The estate and wrongful-death beneficiaries of Carolyn Smith[1] appeal the Copiah County Circuit Court's grant of summary judgment in favor of Hardy Wilson Memorial Hospital, now known as Copiah County Medical Center.  The trial court found that the

---

[1] William H. "Skip" Smith, Jr., filed suit individually and on behalf of the wrongful-death beneficiaries of his wife, Carolyn Smith, and on behalf of Carolyn Smith's estate.  For the sake of clarity, we will refer to the plaintiffs collectively as "the Smiths."

Smiths failed to produce sufficient evidence showing that Carolyn Smith's injuries or death were caused by any alleged negligence of Hardy Wilson's nursing staff. After review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On Friday, December 31, 2015, Carolyn Smith fell outside her home, injuring her shoulder and sustaining a small laceration above her right eye. Carolyn presented to Hardy Wilson Memorial Hospital's emergency department that day at 2:21 p.m. The nursing staff at Hardy Wilson recorded Carolyn's initial vital signs in preparation for the emergency-room physician, Dr. James Johnson, to evaluate Carolyn. Carolyn's initial vitals showed, among other things, a respiration rate of eighteen and an oxygen-saturation rate of ninety-five. Carolyn's records show that Dr. Johnson had evaluated her and had issued orders by 2:55 p.m. Dr. Johnson ordered that Carolyn be administered four milligrams of Zofran and two milligrams of Dilaudid to relieve her pain. Dr. Johnson also ordered an X-ray and CT scan; the X-ray showed that Carolyn had a broken shoulder, and the CT scan appeared normal.

¶3.     After Dr. Johnson's assessment of Carolyn, he called and consulted with Dr. Todd Smith—Carolyn's son and an orthopedic specialist. Dr. Smith recommended that Dr. Johnson discharge Carolyn and that she follow up with an orthopedic specialist in Jackson, Mississippi, the following Monday. At approximately 4:30 p.m., Dr. Johnson made the decision to discharge Carolyn. Shortly after Dr. Johnson had ordered the discharge, Carolyn complained of increased pain. As a result, Dr. Johnson ordered that Carolyn be administered

2

two milligrams of Ativan and two more milligrams of Dilaudid. Pursuant to Dr. Johnson's orders, the nurses began to administer the medication at around 4:45 p.m. while rechecking Carolyn's vital signs. The nurse recorded Carolyn's vital signs, which showed, among other things, a respiration rate of twelve and an oxygen-saturation rate of eighty-two. Because the monitor obtaining the vital-sign readings had the potential to give false readings, the nurse made sure that Carolyn was properly situated and took an additional reading to ensure the readings were accurate.

¶4. At around 5:10 p.m. or 5:20 p.m., the nursing staff began to administer oxygen to Carolyn to stabilize her oxygen levels. At the same time, a member of the nursing staff informed Dr. Johnson of Carolyn's worsening vital signs. Dr. Johnson instructed the nurse to check the vital signs again to ensure they were accurate due to potentially false readings from the monitor. The nurse checked Carolyn's vital signs again, confirmed that they were accurate and informed Dr. Johnson of Carolyn's confirmed vital signs.

¶5. Despite the information that the nurse provided, Dr. Johnson maintained his earlier decision to discharge Carolyn and sent her home at approximately 5:30 p.m. At discharge, members of the nursing staff assisted Carolyn into the vehicle that her husband was driving. In an answer to an interrogatory, Carolyn's husband averred that at some point after Dr. Johnson's decision to discharge Carolyn, "one or both of the nurses at the Hospital said something to the effect that they did not agree with Dr. Johnson's decision to discharge

3

Carolyn when he did."[2] When Carolyn was placed into the vehicle, she was asleep, and the nurses explained to Carolyn's husband that he may have a hard time waking her up. Carolyn's husband drove to the pharmacy to have her prescriptions filled and then continued home. Carolyn was still sleeping when she and her husband arrived at their home. As a result, Carolyn's husband remained in the vehicle with her anticipating that she would eventually wake up. But instead of waking up, Carolyn stopped breathing, and an emergency call was placed for an ambulance. Approximately five hours after being discharged, the ambulance transported Carolyn back to Hardy Wilson. Carolyn was pronounced dead on arrival at Hardy Wilson.

¶6. On June 20, 2016, the Smiths filed suit against several of Carolyn's medical providers, including Hardy Wilson. As part of its claim against Hardy Wilson, the Smiths alleged that Hardy Wilson's negligence, by and through its nursing staff, caused or contributed to Carolyn's death. On July 20, 2016, Hardy Wilson answered, denying fault and asserting that the complaint failed to state a cause of action against Hardy Wilson. Hardy Wilson propounded interrogatories and received responses on October 4, 2016.

¶7. On August 20, 2018, more than two years after the complaint was filed, Hardy Wilson moved for summary judgment. Hardy Wilson argued, among other things, that "[p]laintiffs have failed to designate any expert testimony that any member of the nursing or other non-

_____

[2] No evidence in the record suggests that the nurses expressed their disagreement to Dr. Johnson.

4

medical staff was negligent in their care and treatment of Carolyn Smith and that such negligence caused or contributed to her death." Citing *Vicksburg Healthcare, LLC v. Dees*, 152 So. 3d 1171, 1173 (Miss. 2014), Hardy Wilson contended that "[w]ithout such expert testimony, any such claim fails as a matter of law."

¶8.     In response to Hardy Wilson's summary-judgment motion, the Smiths offered three expert affidavits. A nursing care expert, Irish Patrick-Williams, R.N., opined that Hardy Wilson's nursing staff breached the standard of care applicable to nurses in their care of Carolyn and that such breaches caused or contributed to Carolyn's death. Nurse Patrick-Williams's affidavit, in relevant part, stated that

> the attending nurses knew (or should have known) Carolyn Smith should have been monitored for significantly longer than the 25 minutes for which she was monitored, and she should not have been discharged after only 25 minutes following the doses of Dilaudid and Ativan together, and with the no apparent effect of oxygen therapy on her, and particularly with her deteriorating medical condition.
>
> . . . .
>
> Nurses are trained to know and should know the side effects or adverse reactions with administering Dilaudid alone, and especially accompanied by Ativan, include sedation and respiratory depression, and Carolyn Smith experienced both of these effects. Her resulting medical condition after medication clearly showed she should not have been discharged when she was discharged and in her condition when discharged, and the nurses in the ED at Hardy Wilson on December 31, 2015, providing care to her knew or should have known this.
>
> The attending nurses who participated in Carolyn Smith's discharge, particularly including Joyce Schimmel, who reported the final vital signs of Carolyn Smith's deteriorated condition, should have considered the objective vital signs and taken affirmative action for Carolyn Smith to be kept in the

5

emergency room with continuous monitoring, rather than being discharged, despite physician orders. If there was any problem whatsoever in retaining Carolyn Smith with continuous monitoring in the ED, based on her taken and recorded vital signs, the attending nurses, again particularly including Joyce Schimmel, should have sought supervisory authority and/or consultation from another physician, such as a physician on-call.

. . . .

The nurses' participation in the discharge of Carolyn Smith, without objection or without seeking supervisory intervention, and without use of a calibrated, correctly functioning and accurate monitor, particularly for oxygen saturation rate, constituted clear medical negligence on their part, and the treatment of Carolyn Smith was in breach of the applicable standards of care for the nurses providing care to her in the ED on December 31, 2015.

To a reasonable degree of medical probability, if the nurses in the ED at Hardy Wilson Memorial Hospital had acted within the applicable standards of care, Carolyn Smith would not have been discharged when she was discharged in the condition she was in, and she would not have died because of any continued respiratory depression, or even respiratory arrest or cardiac arrest could have been addressed and treated immediately in the hospital.

¶9.     The Smiths also submitted the affidavits of Dr. Robert Dale, Jr., and Dr. Michael O.

Stodard. Both doctors opined that

[a]s shown by the records, the attending nurse reported Carolyn Smith's deteriorated medical condition, as shown by her vital signs, to the emergency physician, Dr. Johnson, but Dr. Johnson failed to take corrective action or delay discharge under the existing circumstances, and the attending nurse also failed to take any further action despite the oxygen saturation rate of 82% as taken and recorded by monitor for Carolyn Smith at discharge.

. . . .

To a reasonable degree of medical probability, but for the discharge by Dr. Johnson of Carolyn Smith with depressed respiratory function and altered mental state, Carolyn Smith would not have died.

6

Dr. Johnson breached the applicable standards of care in his treatment of Carolyn Smith by discharging her with the vital signs which were taken and recorded at the time of discharge per the records, by failing to take action to obtain additional monitor readings from correctly functioning equipment and/or obtain arterial blood gases to confirm her oxygen saturation level, and by failing to take corrective action to address her deteriorated medical condition and altered mental state as shown by the records, particularly the 82% oxygen saturation rate and her fallen GCS, along with her other vital signs, at discharge, and by failing to monitor Carolyn Smith's condition and vital signs for longer than 25 minutes post-medication.

Dr. Johnson's action and his failures to act, including but not limited to discharging Carolyn Smith under the existing circumstances, constituted clear medical negligence and breach of applicable standards of care, and caused Carolyn Smith's death after discharge. Further, Dr. Johnson's actions and his failures to act even rose to the level of gross negligence showing a disregard or indifference for Carolyn Smith's safety.

¶10. The trial court held a hearing on Hardy Wilson's summary-judgment motion.[3] The trial court reviewed and considered the Smiths' expert affidavits along with Hardy Wilson's motion, exhibits, and its memorandum in support, as well as all of the Smiths' responsive documents and exhibits. Applying *Vaughn v. Mississippi Baptist Medical Center*, 20 So. 3d 645, 652 (Miss. 2009), the trial court reasoned that "[u]nder Mississippi law, nurses such as Patrick-Williams, are prohibited from giving medical causation opinions and cannot establish the causation element of [the Smiths'] claims." The trial court also determined that "neither Dr. Dale nor Dr. Stodard rendered opinions as to [Hardy Wilson] or its nursing staff." As a result, the trial court concluded that "no competent evidence has been produced on the causation element of [the Smiths'] claims against [Hardy Wilson's] nursing staff, and

_____

[3] The hearing transcript is not part of the record on appeal.

7

[the Smiths] cannot prove Carolyn Smith's injuries or death was [sic] caused by any alleged negligence of the nursing staff." Thus, the trial court granted Hardy Wilson's motion for summary judgment.

¶11.    The Smiths have timely appealed to this Court, arguing that the trial court erred by granting Hardy Wilson summary judgment. The Smiths argue that they provided cumulative expert-witness testimony showing that Hardy Wilson, through its nursing staff, committed medical negligence that proximately caused Carolyn Smith's death. Supplemental briefing was also requested and confirmed that all pertinent issues were properly before the Court.

**STANDARD OF REVIEW**

¶12.    "This Court reviews a trial court's grant of summary judgment de novo." ***Norman v. Anderson Reg'l Med. Ctr.***, 262 So. 3d 520, 523 (Miss. 2019) (citing ***Kilhullen v. Kan. City S. Ry.***, 8 So. 3d 168, 174 (Miss. 2009)). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). "[T]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." ***One S., Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007) (internal quotation marks omitted) (quoting ***Green v. Allendale Planting Co.***, 954 So. 2d 1032, 1037 (Miss. 2007)).

¶13.    "[S]ummary judgment is mandated where the respondent has failed 'to make a

8

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.**, 952 So. 2d 177, 180 (Miss. 2007) (internal quotation marks omitted) (quoting **Wilbourn v. Stennett, Wilkinson & Ward**, 687 So. 2d 1205, 1214 (Miss. 1996)). Therefore, "to survive summary judgment, the opposing party may not rely on mere allegations but must set forth specific facts to show genuine issues for trial." **Patterson v. T. L. Wallace Constr., Inc.**, 133 So. 3d 325, 329 (Miss. 2013) (citing **Whiting v. Univ. of S. Miss.**, 62 So. 3d 907, 914 (Miss. 2011), *overruled on other grounds by* **Springer v. Ausbern Constr. Co., Inc.**, 231 So. 3d 980, 988 (Miss. 2017)). We have also explained that "this Court may affirm the lower court's grant of summary judgment on grounds other than that which the trial court used." **Kirksey v. Dye**, 564 So. 2d 1333, 1336 (Miss. 1990) (citing **Brocato v. Miss. Publishers Corp.**, 503 So. 2d 241, 244 (Miss. 1987)).

## ANALYSIS

### I. Whether the trial court erred by finding that Hardy Wilson was entitled to summary judgment.

¶14. The narrow issue that the Smiths urge us to address in this appeal is whether they presented sufficient proof of causation so that summary judgment in favor of Hardy Wilson was improper. The Smiths contend that they presented cumulative expert opinions that sufficiently showed that Hardy Wilson's nursing staff proximately caused Carolyn's death.

¶15. At the outset, we address our holding in *Vaughn* and its relevance here. In *Vaughn*, we explicitly held that "nurses cannot testify as to medical causation." *Vaughn*, 20 So. 3d

9

at 652. The trial court properly applied *Vaughn* in this case and determined that Nurse Patrick-Williams could not render an opinion regarding the cause of Carolyn's death. Indeed, the Smiths acknowledge the trial court's correct interpretation of *Vaughn*. But the Smiths argue the trial court misapplied *Vaughn*. Based on our review of the Smiths' proffered evidence, we find that it is unnecessary to address *Vaughn*'s application or the use of the other doctors' affidavits to prove medical causation against Hardy Wilson. For the reasons discussed below, we find that the Smiths failed to present any evidence that other actions by Hardy Wilson's nursing staff would have, in fact, prevented the discharge of Carolyn Smith.

¶16. In this medical-malpractice action, the Smiths, as the plaintiffs, bore the burden of producing "significant and probative" evidence establishing each element of their claim to sufficiently rebut Hardy Wilson's motion for summary judgment. *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990) (emphasis omitted). The essential elements of a medical-malpractice claim that must be shown are: "(1) the applicable standard of care; (2) a failure to conform to the required standard; and (3) an injury proximately caused by a defendant's noncompliance with the standard." *Norman*, 262 So. 3d at 523 (citing *Mem'l Hosp. at Gulfport v. White*, 170 So. 3d 506, 508 (Miss. 2015)). Unless the layman's exception[4] applies, "the plaintiff must demonstrate . . . through medical-expert

---

[4]We have explained that "[l]ay testimony is sufficient to establish only those things that are purely factual in nature or thought to be in the common knowledge of laymen." *Hubbard v. Wansley*, 954 So. 2d 951, 961 (Miss. 2007) (internal quotation marks omitted)

10

testimony . . . that the [alleged] breach was the proximate cause or the proximate contributing cause of the alleged injuries." *Norman*, 262 So. 3d at 523–24 (citing *Hubbard*, 954 So. 2d at 957).

¶17. We have reiterated that "[p]roximate causation is an essential ingredient of a claim of medical negligence." *Cavalier v. Mem'l Hosp. at Gulfport*, 253 So. 3d 288, 293 (Miss. 2018) (internal quotation marks omitted) (quoting *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 499 (Miss. 1995)). "Under Mississippi law, causation has two aspects: the alleged negligent conduct must be shown to have caused the injury, in fact, and it must be shown to be the injury's legal or proximate cause." *Gulfport OB-GYN, P.A. v. Dukes, Dukes, Keating & Faneca, P.A.*, 283 So. 3d 676, 679 (Miss. 2019) (citing *Norman*, 262 So. 3d at 529). "It is not enough to show that there were deviations from the requisite standard of care for nursing." *Richardson v. Methodist Hosp. of Hattiesburg, Inc.*, 807 So. 2d 1244, 1248 (Miss. 2002). "[T]he plaintiff must show that there is causation in fact." *Id.* (citing *Trapp v. Cayson*, 471 So. 2d 375, 383 (Miss. 1985)). "Cause in fact means that, but for the defendant's negligence, the injury would not have occurred." *Huynh v. Phillips*, 95 So. 3d 1259, 1263 (Miss. 2012) (citing *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007)).

¶18. In today's case, the Smiths' expert Nurse Patrick-Williams opined that the standard of care required the nursing staff to take "affirmative action for Carolyn Smith to be kept in

(quoting *Drummond v. Buckley*, 627 So. 2d 264, 268 (Miss. 1993)).

the emergency room . . . despite physician orders" or to "s[eek] supervisory authority and/or consultation from another physician, such as a physician on-call." Importantly, Nurse Patrick-Williams further asserted that "if the nurses . . . at Hardy Wilson Memorial Hospital had acted within the applicable standards of care, Carolyn Smith would not have been discharged . . . ." It is this assertion that has no foundation in the record.

¶19. Proof of causation "must not leave the causal connection a matter of conjecture; it must be something more than consistent with the plaintiff's theory . . . ." *Id.* at 1264 (citing *Berry v. Brunt*, 252 Miss. 194, 172 So. 2d 398, 401 (1965)). This Court has explained that experts "may not assume facts not supported by the record." *Treasure Bay Corp. v. Ricard*, 967 So. 2d 1235, 1242 (Miss. 2007). An expert's opinion "must rise above mere speculation." *Parvin v. State*, 113 So. 3d 1243, 1247 (Miss. 2013) (internal quotation marks omitted) (quoting *Williams v. State*, 35 So. 3d 480, 486 (Miss. 2010)). Moreover, an expert's mere "[a]llegations without 'detailed and precise facts' will not prevent summary judgment." *Herrington v. Leaf River Forest Prods., Inc.*, 733 So. 2d 774, 779 (Miss. 1999) (quoting *Strantz v. Pinion*, 652 So. 2d 738, 742 (Miss. 1995)). "Expert testimony will always be deemed unreliable if it is the product of subjective belief or unsupported speculation." *Corrothers v. State*, 148 So. 3d 278, 294 (Miss. 2014) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 36 (Miss. 2003)).

¶20. Today's record contains no evidence other than Nurse Patrick-Williams's speculation that if the nurses had objected to Carolyn's discharge, had sought administrative assistance

or had sought assistance from another doctor, then Carolyn would not have been discharged. The Smiths did not present any proof that an administrator with the authority to overrule the doctor or an on-call physician with the same power even existed, much less that either of those individuals would have overruled Dr. Johnson's decision to discharge Carolyn. Hardy Wilson asserts in its brief, seemingly without contest, that no such personnel were available. More importantly, the record does not contain any evidence that said personnel were or should have been available, a vital link in establishing causation under this claim. We would literally have to assume, with no evidence, that such personnel existed and would act accordingly.

¶21.    Additionally, the record contains no proof that Dr. Johnson would have changed his mind when faced with opposition from the nurses. To be sure, the Smiths' physician experts opine that Dr. Johnson violated the standard of care by discharging Carolyn. But neither Dr. Dale nor Dr. Stodard aver that persistence by the nurses *after* Dr. Johnson's final decision to discharge would have resulted in a different decision. They are the only experts presented who could testify as to what the doctor should have done with or without intervention by the nurses. Based on our review, the record affirmatively shows that despite the nurses' communicating Carolyn's condition to Dr. Johnson, he nonetheless chose to discharge her. In fact, all three of the Smiths' proffered experts acknowledge and the Smiths repeatedly concede that the nursing staff fully informed Dr. Johnson of Carolyn's vital signs, that Dr. Johnson had the nurses recheck the vital signs after they had taken a turn for the worse to

13

confirm the numbers and that it was still Dr. Johnson's decision to discharge Carolyn.

¶22. We note that causation is generally a question for the jury. ***Ready v. RWI Transp., LLC***, 203 So. 3d 590, 594 (Miss. 2016). But we have explained that "the question as to whether or not the opinion of an expert is based on, and supported by sufficient facts or evidence to sustain it, is a question of law for the court." ***Gulf Ins. Co. v. Provine***, 321 So. 2d 311, 314 (Miss. 1975) (citing 32 C.J.S. *Evidence* § 546(63) (1964)).

¶23. We find that the Smiths have not shown through significant and probative evidence that if Hardy Wilson's nursing staff had objected to Carolyn's discharge to Dr. Johnson or had sought administrative assistance or assistance from another doctor, then Carolyn would not have been discharged. We decline to draw an inference for the Smiths when the record is devoid of facts upon which the inference can reasonably be based. Without factual support in this record, Nurse Patrick-Williams's *ipse dixit* falls short of permitting a reasonable inference. A reasonable inference cannot flow from a complete absence of proof and cannot be based on surmise, speculation, conjecture or supposition. The record contains no evidence supporting the Smiths' claim. No proof was presented that Dr. Johnson would have changed his mind or that a superior would have overruled his decision. Therefore, we affirm.

**CONCLUSION**

¶24. We conclude that the Smiths failed to present sufficient proof that different actions by Hardy Wilson's nursing staff would have been reasonably likely to prevent Carolyn's discharge. Nurse Patrick-Williams's speculative opinion to the contrary is wholly

14

unsupported by any fact in the record. Accordingly, we affirm the trial court's grant of

summary judgment in favor of Hardy Wilson Memorial Hospital.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., NOT PARTICIPATING.**