905 So.2d 697 (2004)
James LUVENE, Appellant
v.
Dorothy WALDRUP and Michael Cooke, Appellees.
No. 2002-CA-01313-COA.
Court of Appeals of Mississippi.
July 27, 2004.
Rehearing Denied November 30, 2004.
*698 Pearson Liddell, Mississippi State, Gregory C. Weiss, Michael J. Hall, attorneys for appellant.
Beverly Davis Buskirk, Donna M. Barnes, Tupelo, Grady F. Tollison, Oxford, John G. Wheeler, Tupelo, attorneys for appellees.
Before KING, C.J., BRIDGES, P.J. and CHANDLER, J.
BRIDGES, P.J., for the Court.
¶ 1. James Luvene filed a pro se complaint with the U.S. Equal Employment Opportunity Commission (EEOC) against his former employer, Metropolitan Life Insurance Company (MetLife), and his former supervisor, Shelby Ware. After notification of the EEOC's findings, on or around June 3, 1999, Luvene filed a lawsuit in the United States District Court for the Northern District of Mississippi alleging Title VII[1] race discrimination and retaliation against MetLife and Ware. However, process was not issued for more than 120 days. MetLife and Ware filed a motion to dismiss for insufficiency of service of process and on March 22, 2000, the motion was granted by the district court. Luvene filed a motion to reconsider but the district court denied his motion on April 6, 2000.
¶ 2. As a result of the dismissal, Luvene brought suit against Michael Cooke and Dorothy Waldrup on August 1, 2000, in the Circuit Court of Marshall County, Mississippi. Waldrup filed a motion for summary *699 judgment which was heard by the lower court and later taken under advisement. The hearing on Cooke's motion for summary judgment was held on June 6, 2002. On July 15, 2002, the court granted both Waldrup's and Cooke's motions for summary judgment, ruling that Luvene failed to present to the court any genuine issue of material fact to his claim against Waldrup and Cooke and ruling as a matter of law that there was no basis for recovering against either of the attorneys.

STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRONEOUSLY HELD THAT IN A SUMMARY JUDGMENT PROCEEDING ON THE ISSUE OF LEGAL MALPRACTICE, EXPERT OPINION IS REQUIRED TO PROVE THAT THE ATTORNEY BREACHED HIS/HER STANDARD OF CARE.
II. WHETHER THE TRIAL ERRONEOUSLY HELD THAT IN A SUMMARY JUDGMENT PROCEEDING ON THE ISSUE OF LEGAL MALPRACTICE, THE PLAINTIFF MUST PROVE THAT HE/SHE WOULD HAVE PREVAILED AT TRIAL ON THE UNDERLYING CLAIM.
III. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENTS TO DEFENDANTS WALDRUP AND COOKE.
IV. WHETHER THE TRIAL COURT ERRED IN NOT CONSIDERING THE AFFIDAVIT OF CHARLES YOST, ESQ., THE PLAINTIFF'S EXPERT, AS EVIDENCE THAT WALDRUP BREACHED HER STANDARD OF CARE AND CAUSED THE PLAINTIFF'S DAMAGES.

FACTS
¶ 3. Originally, Luvene filed a pro se complaint with the EEOC against his former employer, MetLife and his former supervisor, Ware, alleging violations of Title VII of the Civil Rights Act of 1964. Luvene retained Dorothy Waldrup, who is licensed to practice law in Louisiana, to represent him in pursuing his claims against MetLife and Ware before the EEOC. After the EEOC matter was concluded, Waldrup determined that Mississippi was the proper forum to file suit. She began to gather information in the case and requested information from Luvene about the identities and locations of individuals who could verify his allegations. Luvene gave Waldrup the name of Mary Ann Hurst, a former employee of MetLife who had also filed a claim against MetLife and Ware. After gathering more information, Waldrup believed Hurst was represented by Michael Cooke. She advised Luvene that a Mississippi attorney would be necessary to prosecute his claim and told Luvene that she would contact Cooke and ask him to serve as local counsel in the matter. Waldrup later informed Luvene that she had spoken to Cooke and he had agreed to represent Luvene, along with Waldrup, acting as local counsel, because Cooke was licensed to practice law in Mississippi and Waldrup was not.
¶ 4. On August 26, 1999, Luvene met with Cooke and Waldrup in Oxford, Mississippi. A contract was signed between Luvene and Cooke for legal services. Waldrup was not included in the contract in any way nor did her name appear on any of the pleadings filed in the district court by Cooke. Pursuant to the terms of their employment contract, Cooke filed a lawsuit against MetLife and Ware in the United States District Court for the Northern District of Mississippi.
¶ 5. However, the defendants in the federal MetLife action were not served with *700 process within the 120 days provided by Rule 4(m) of the Federal Rules of Civil Procedure, and the district court dismissed the action without prejudice for insufficiency of service of process on March 22, 2000. The court determined that Luvene's status as a pro se litigant for most of the 120 day period did not constitute good cause entitling him to a mandatory extension of time in which to serve process, and the court declined to exercise its discretion to grant an extension of time to effect process. On or about April 5, 2000, Luvene filed a motion for reconsideration which was later denied by the court.
¶ 6. On August 1, 2000, as a result of the dismissal, Luvene filed a complaint alleging legal malpractice against Cooke and Waldrup in the Circuit Court of Marshall County. After extensive discovery, Waldrup and Cooke separately moved for summary judgment on October 12, 2001, and December 31, 2001, respectively, arguing that Luvene could not establish that "but for his attorney's negligence, he would have been successful in the prosecution" of the MetLife action. Appellees specifically relied upon Luvene's failure to show the existence of any damages as a result of the dismissal of the federal MetLife action.
¶ 7. At the March 8, 2002, hearing on Waldrup's motion, Luvene argued that it was "premature" to rule on the issue of damages because "those damages need to be determined by the trier of fact and it's just not right for summary judgment at this time." The court determined that Luvene failed to present an expert to support his legal negligence claim. The court also determined that Waldrup's offered expert affidavit was sufficient to refute mere allegations in a complaint. Additionally, at the hearing, the judge requested that Luvene disclose his expert witness(es) and he declined. At the conclusion of the hearing, Waldrup's motion was taken under advisement by the court.
¶ 8. On June 3, 2002, just three days before the hearing on Cooke's motion and after the hearing on Waldrup's motion, Luvene submitted the affidavit of attorney Charles Yoste, to support his position that Cooke and Waldrup were negligent in the handling of Luvene's case. The court determined that the filing of Yoste's affidavit was at least eighty-seven days after the date it was due (March 7, 2002) and therefore was untimely, and declined to give it consideration, and ordered it stricken from the record. On July 15, 2002, the court granted both Waldrup's and Cooke's motions for summary judgment reasoning that Luvene failed to present to the court any genuine issue(s) of material fact as to his claims against Waldrup and Cooke. In its opinion, the court stated that Luvene presented no evidence or testimony from an expert, either in person, by affidavit, or otherwise in a timely fashion. Additionally, the court determined that Luvene failed to show the existence of monetary damages and, to the contrary, found that Luvene took a job with another insurance company and was making more money with American General than he had with MetLife.
¶ 9. The case was dismissed with prejudice as to each appellee. Luvene now appeals to this Court.

STANDARD OF REVIEW
¶ 10. When reviewing a lower court's decision to grant or deny a summary judgment motion, it is proper to employ a de novo standard of review. Hudson v. Courtesy Motors, 794 So.2d 999, 1002(¶ 7) (Miss.2001) (citing Russell v. Orr, 700 So.2d 619, 622 (Miss.1997)).
¶ 11. The rule in Mississippi is that summary judgments shall be entered by a trial judge "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *701 any material fact and that the moving party is entitled to a judgment as a matter of law . . ." M.R.C.P. 56(c).
¶ 12. It is standard practice that "summary judgment, in whole or in part, should be granted with great caution." Brown v. Credit Ctr. Inc., 444 So.2d 358, 363 (Miss. 1983). The moving party has the burden of proving that no triable genuine issue of fact exists, and the non-moving party is given the benefit of reasonable doubt. Tucker v. Hinds, 558 So.2d 869, 872 (Miss. 1990). However, the non-moving party cannot just remain silent and do nothing. Newell v. Hinton, 556 So.2d 1037, 1041(Miss.1990). He must bring forward "significant probative evidence demonstrating the existence of a triable issue of fact." Id. at 1042.
¶ 13. Furthermore, the plaintiff must show that the party charged is the party actually responsible for the wrong, with reasonable certainty or definiteness. Berry v. Brunt, 252 Miss. 194, 172 So.2d 398, 401 (Miss.1965). Also noted by the Berry court, "it is not enough that this shall be left to conjecture or to inferences so loose that it cannot be dependently told where conjecture ceases and cogent inferences begins." Id. (citing McCain v. Wade, 181 Miss. 664, 180 So. 748 (1938)).
¶ 14. In Brown, the court explained that while considering the motion for summary judgment, "the trial court must view all the evidence in the light most favorable to the non-movant." Brown, 444 So.2d at 363. Upon this consideration, the motion should be granted if the moving party is entitled to judgment as a matter of law, otherwise it should be denied. Id.
¶ 15. As in the case of Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1215 (Miss.1996), in order for a plaintiff to recover in a claim of negligence in a legal malpractice action, he "must prove by a preponderance of the evidence the following: (1) existence of a lawyer-client relationship; (2) negligence on the part of the lawyer in handling his client's affairs entrusted to him; and, (3) proximate cause of the injury." Id. The court in Wilbourn further stated:
As to the second factor, a lawyer owes his client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the members of the legal profession similarly situated. Failure to do so constitutes negligent conduct on the part of the lawyer. (citation omitted) As to the third essential ingredient, the plaintiff must show that, but for their attorney's negligence, he would have been successful in the prosecution or defense of the underlying action.
Wilbourn, 687 So.2d at 1215.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRONEOUSLY HELD THAT IN A SUMMARY JUDGMENT PROCEEDING ON THE ISSUE OF LEGAL MALPRACTICE, EXPERT OPINION IS REQUIRED TO PROVE THAT THE ATTORNEY BREACHED HIS/HER STANDARD OF CARE.
II. WHETHER THE TRIAL ERRONEOUSLY HELD THAT IN A SUMMARY JUDGMENT PROCEEDING ON THE ISSUE OF LEGAL MALPRACTICE, THE PLAINTIFF MUST PROVE THAT HE/SHE WOULD HAVE PREVAILED AT TRIAL ON THE UNDERLYING CLAIM.
¶ 16. It is well established in Mississippi that affidavits by expert witnesses are permitted in support of or in opposition to a summary judgment motion. Perry Sansing, Mississippi Civil Procedure § 11:33 (2001); also see Daniels v. GNB, Inc., 629 So.2d 595, 601-02 (Miss.1993). "Expert affidavits are routinely used in medical malpractice actions because the underlying substantive law usually requires *702 expert testimony to establish the elements of that action." Id. See Travis v. Stewart, 680 So.2d 214, 218 (Miss.1996); Palmer v. Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794 (Miss.1995); Phillips v. Hull, 516 So.2d 488, 491 (Miss. 1987).
¶ 17. The Mississippi Supreme Court has stated that the same standards of professional conduct are generally applicable to the attorney and physician alike, namely:
(1) Both are required to use that degree of care, skill and diligence which is commonly possessed and exercised by attorneys/physicians in that locality.
(2) Neither is an insurer or guarantor of results which will be attained.
(3) Unsuccessful results do not give rise to a presumption of negligence.
(4) Both are liable only for negligent failure to use that requisite care and skill.
Dean v. Conn, 419 So.2d 148, 150 (Miss. 1982), citing Nause v. Goldman, 321 So.2d 304 (Miss.1975); Thompson v. Erving's Hatcheries, Inc., 186 So.2d 756 (Miss.1966) (for attorneys).
¶ 18. In a case involving legal malpractice, the Mississippi Supreme Court has held that "the generally accepted rule is that expert testimony is ordinarily necessary to support an action for malpractice of a professional man in those situations where a special skill, knowledge, experience, learning or the like are required." Lane v. Oustalet, 850 So.2d 1143, 1150 (¶ 20) (Miss.Ct.App.2002). See also Dean, 419 So.2d at 150.
¶ 19. Also playing a role, on expert testimony at the summary judgment level, are the Mississippi Rules of Evidence. See M.R.E. 702-705. "The trial judge first determines whether expert testimony will assist the trier of fact and, if so, then decides whether the particular expert proffered to give that testimony is qualified. That these determinations are made at the summary judgment stage rather than at trial is inconsequential." Perry Sansing, Mississippi Civil Procedure § 11:33 (2001).
¶ 20. "Expert evidence as to standards of practice and negligence is generally admissible in malpractice actions against attorneys." 7 Am.Jur.2d Attorneys At Law § 237.
¶ 21. Luvene also claims that the trial court erred in making him prove, in the summary judgment proceeding, that he would have prevailed at trial on the underlying claim but for the attorney's negligence.
¶ 22. It is also well established in Mississippi that in order to establish legal malpractice, "proximate cause and the extent of the alleged injury must be proven by the plaintiff." Wilbourn, 687 So.2d at 1215. As stated above, the Mississippi Supreme Court also stated that the plaintiff bears the burden to show that "but for their attorney's negligence, [plaintiff] would have been successful in the prosecution or defense of the underlying action." Id. See McLeod v. Jackson, 829 So.2d 722, 725(¶ 12) (Miss.Ct.App.2002); Rogers v. Eaves, 812 So.2d 208, 211(¶ 14) (Miss. 2002).
¶ 23. It is crystal clear to this Court that these issues are without merit.
III. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENTS TO DEFENDANTS WALDRUP AND COOKE.
IV. WHETHER THE TRIAL COURT ERRED IN NOT CONSIDERING THE AFFIDAVIT OF CHARLES YOST, ESQ., THE PLAINTIFF'S EXPERT, AS EVIDENCE THAT WALDRUP BREACHED HER STANDARD OF CARE AND CAUSED THE PLAINTIFF'S DAMAGES.
¶ 24. In relation to Waldrup's motion for summary judgment, the trial *703 judge, in his opinion and order, held that Luvene failed to present evidence or testimony from an expert, either affidavit or otherwise, showing "that the actions of Waldrup deviated from the generally accepted or normal standard of care for attorney's in trial practice." At the hearing held on March 8, 2002, Luvene was requested to disclose his expert witness(es), but Luvene "declined." While Luvene did file an affidavit executed by Charles Yoste, a practicing attorney, Luvene filed the affidavit on or about June 3, 2002, which was at least eight-seven days after the date it was due. Therefore, the judge correctly ruled that the affidavit would be stricken and would not be considered part of the record. It is also noteworthy that Luvene failed to request additional time in which to present the affidavit of his expert. A plaintiff is required to offer an expert opinion in order to sustain his burden of proof for "legal" malpractice. Luvene failed to present any genuine issue(s) of material fact as to his claim against Waldrup and the judge granted summary judgment and dismissed the cause against Waldrup with prejudice. With this we find no error.
¶ 25. As the order and opinion relates to Cooke, the trial judge held that the affidavit of Charles Yoste was timely filed as to this defendant. In his affidavit, Yoste stated that he "has reviewed the material provided by Luvene's counsel ... and has formed expert opinions in this matter...." Also in his affidavit, Yoste concluded that both Cooke and Waldrup were negligent in handling Luvene's case and that Luvene was damaged because of their negligence.
¶ 26. In order for Luvene to succeed in his claim of legal malpractice against Cooke, it is vitally important that he prove: (1) the existence of a lawyer-client relationship, (2) negligence on the part of the lawyer in handling his client's affairs entrusted to him, and (3) proximate cause of the injury which is typically stated that, but for his attorney's negligence, he would have been successful in the prosecution of his claim. Wilbourn, 687 So.2d at 1215. The burden of proof required to prove legal malpractice as established in Wilbourn is what the plaintiff is to prove by a preponderance of evidence throughout the course of trial. The burden of proof required to get beyond summary judgment is not as steep as it is at trial. It is true the affidavit alone does not rise to a level sufficient to prove by a preponderance of the evidence that but for Cooke's negligence Luvene would have been successful in his claim. However, the affidavit of Yoste does broadly cover the three requirements of Wilbourn and therefore does create a question of fact to be determined by a trier of fact.
¶ 27. In order to determine whether summary judgment was appropriate in the present case, we examined the pleadings, depositions, admissions, answers to interrogatories, and affidavits to determine whether Luvene made a sufficient showing to survive Cooke's motion for summary judgment. In the present case, Luvene did sustain his burden in proving that a genuine issue of material fact existed and the decision of the trial judge granting summary judgment in favor of Cooke is reversed and remanded.
¶ 28. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEES.
KING, C.J., LEE, MYERS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CHANDLER, J., *704 CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.
CHANDLER, J., Concurring in Part, Dissenting in Part:
¶ 29. I must respectfully dissent from the majority's holding that the case against Cooke should have survived summary judgment. In my view, summary judgment was proper as to both Waldrup and Cooke because Luvene has failed to prove that he was damaged by the dismissal of his claims by the federal district court. This is because, after the district court dismissed Luvene's claims without prejudice, Luvene could have timely filed an action under 42 U.S.C. Section 1981 based on the same acts of employment discrimination that he alleged in his original pleadings.
¶ 30. A brief exploration of the facts of this case is in order. Luvene filed an initial charge against MetLife with the Equal Employment Opportunity Commission on February 11, 1997, and filed an amended charge on June 2, 1997, alleging that MetLife subjected him to continuous harassment and discrimination based on race. On August 21, 1998, Luvene filed a second charge with the EEOC, this time alleging that MetLife discharged him on June 19, 1998, in retaliation for his filing of the previous charge. The record reveals that Luvene received a right to sue letter on his initial charge on March 9, 1999, and that, on April 29, 1999, a right to sue letter was mailed to Luvene on the retaliation charge. A charging party has ninety days from the date of receipt of a right to sue letter to commence a civil action against an employer for violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e-5 (f)(1). On June 4, 1999, Luvene filed a timely complaint against MetLife and Ware in the federal district court. The complaint alleged that Luvene was subjected to race-based discrimination due to a hostile work environment and retaliation in violation of Title VII and § 1981, inter alia. Luvene later amended the complaint. That action was dismissed for failure to serve the defendants with process.
¶ 31. As Luvene's suit was dismissed without prejudice, he could have recommenced the Title VII action but for the running of the ninety day period in which he could sue. On August 1, 2000, Luvene filed the instant action against Waldrup and Cooke, claiming that, due to their negligence, he "lost his right to recover all damages from MetLife and Shelby Ware... including ... compensatory damages... punitive damages ... front pay ... reasonable attorneys' fees and such other general and special relief as reasonable and just, and to which he was entitled to seek under law." Luvene's assessment of the loss caused by his attorneys' alleged malpractice ignores the fact that, in addition to the Title VII action, Luvene had an alternative cause of action based on the same allegedly discriminatory conduct under § 1981.
¶ 32. Section 1981 prohibits racial discrimination in the making and enforcement of contracts, including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(a) and (b). The elements of § 1981 claims are identical to claims under Title VII. Pratt v. City of Houston, 247 F.3d 601, 606 n. 1 (5th Cir.2001). Compensatory and punitive damages are available under § 1981. Jones v. Western Geophysical Co., 761 F.2d 1158, 1162 (5th Cir.1985). Unlike under Title VII, a § 1981 claimant need not seek administrative relief prior to *705 filing a civil action. Burnett v. Grattan, 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). The statute of limitations is borrowed from state law, and is three years in Mississippi. Kozam v. Emerson Elec. Co., 711 F.Supp. 313, 316 (N.D.Miss. 1989) (the three year limitations period provided by Mississippi Code Annotated section 15-1-49 (Rev.2003) applies to § 1981 actions). Federal law provides that a § 1981 claim accrues on the date "when `the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir.1988) (citations omitted).
¶ 33. In the instant case, the federal district court dismissed Luvene's claims on March 22, 2000. Luvene could have immediately recommenced his § 1981 action against MetLife and Ware and demanded recovery for all the discrimination claims that had accrued within the previous three years. It is apparent from the record that the three-year limitation period would have allowed Luvene to seek recovery for all of the claims alleged in his original action. For example, Luvene's retaliation claim accrued when Luvene was discharged on June 19, 1998, giving him until June 19, 2001, to file a § 1981 claim based on the discharge.
¶ 34. Luvene also claimed that MetLife did not give black agents the same training and opportunities it gave to white agents, that Luvene's benefits and commission checks were delayed, that Ware made racially derogatory comments and harassed Luvene, and that MetLife failed to timely investigate Luvene's complaints, creating a hostile work environment. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the United States Supreme Court held that hostile environment claims will not be time barred as long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period. See also Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir.2004). The record reveals that some of the allegedly discriminatory acts occurred more than three years before Luvene's original action was dismissed, and some occurred after that date. As Luvene claimed that the acts created a hostile environment, pursuant to National Railroad, he could have sought recovery based on all of the acts by recommencing his § 1981 suit.[2]
¶ 35. When the federal court dismissed his original suit, Luvene began the instant case against his former attorneys alleging that their conduct caused the loss of his employment discrimination claims. In order to recover against his former attorneys for malpractice, Luvene must prove that his discrimination claims would have succeeded, and that their negligence actually caused the loss of each meritorious claim. Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1215 (Miss.1996). In Golden v. Duggins, 374 So.2d 243, 245 (Miss. 1979), our supreme court upheld the grant of a JNOV in favor of the defendant in a *706 legal malpractice case, holding that the case was prematurely brought because the plaintiff had other legal avenues open for recovery on the allegedly lost claim, including a pending federal court action. Similarly, the dismissal of Luvene's original action did not cause the loss of his discrimination claims because a viable action remained under § 1981 for all of the claims stated in his original action. Thus, Luvene has failed to show that the conduct of his former attorneys caused the loss of his claim. In my opinion, this failure renders his malpractice action fatally deficient; after his federal claims were dismissed, Luvene should have pursued the avenue for recovery available to him under § 1981 instead of suing his former attorneys.
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.
GRIFFIS, J., Concurring in Part and Dissenting in Part:
¶ 36. With much respect for the majority, I respectfully concur with the majority's decision to affirm the summary judgment entered in favor of Dorothy Waldrup and dissent from the majority's decision to reverse and remand the summary judgment entered in favor of Michael Cooke.
¶ 37. I find that the majority's reasoning, stated in paragraph 22, to be dispositive. The majority correctly states that "the plaintiff bears the burden to show `but for their attorney's negligence, (plaintiff) would have been successful in the prosecution or defense of the underlying action.'" (citations omitted). The trial court determined that Yoste's affidavit was defective because it failed to state a factual basis or expert opinion that but for the attorney's negligence Luvene would have been successful in the prosecution of his underlying claims. Thus, the court concluded that Luvene failed to prove that any genuine issue of material fact existed as to causation in his claim against Cooke. Yoste's affidavit was indeed deficient. It provided no basis for the conclusion that Cooke's negligence was the cause of Luvene's failure to prevail in the federal court action. It provided no opinion that Luvene could or would have prevailed in the federal court action if Cooke had not been negligent in handling the case.
¶ 38. For these reasons, I would affirm the trial court's entry of summary judgment.
NOTES
[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1999).
[2] Though Luvene expressly claimed that the actions of MetLife and Ware created a hostile environment, in a § 1981 suit a federal district court on summary judgment could have found that the alleged discriminatory activity constituted a series of discrete acts instead of aggregating to create a hostile environment. See Pegram, 361 F.3d at 280. Claims based on discrete acts of discrimination, though related, will be barred if not brought within the limitations period. Id. at 279. If the discrimination was found to constitute discrete acts, Luvene might have lost the right to recovery for those acts due to the dismissal of his original claim. In that case, Luvene could have sought recovery for the loss in a legal malpractice action based upon the dismissal.