# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01775-COA

**HELENE BENSON**                                                                    **APPELLANT**

**v.**

**MACK D. RATHER D/B/A THE TINT SHOP**                                   **APPELLEES**
**AND VICKSBURG PRINTING AND**
**PUBLISHING COMPANY**

DATE OF JUDGMENT:                12/01/2014
TRIAL JUDGE:                          HON. M. JAMES CHANEY JR.
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         FRANK G. VOLLOR
ATTORNEYS FOR APPELLEES:        ARTHUR F. JERNIGAN JR.
                                      WILLIAM M. DALEHITE JR.
                                      ROBERT NELSON RUTHERFORD
                                      JAMES SETH MCCOY
NATURE OF THE CASE:               CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:         GRANTED SUMMARY JUDGMENT TO
                                      THE APPELLEES
DISPOSITION:                        AFFIRMED - 06/21/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Helene Benson appeals the Warren County Circuit Court's grant of summary judgment to Mack Rather d/b/a The Tint Shop and Vicksburg Printing and Publishing Co. (collectively, the Defendants).  Finding no error in the circuit court's grant of summary judgment, we affirm.

## FACTS

¶2.     On September 26, 2012, Benson went to The Tint Shop to replace the tires on her car.

As the record reflects, Rather, who operated and owned The Tint Shop, leased the building from Vicksburg Printing. The Tint Shop's premises consisted of an office and customer-service area connected to two service bays. Benson waited in The Tint Shop's customer waiting room while one of the employees parked her car outside the second service bay and replaced her tires.

¶3.     Benson testified in her deposition that, after The Tint Shop installed her new tires, she attempted to pay her bill with a check or a credit card. However, Rather informed Benson that The Tint Shop accepted neither form of payment and that she needed to pay her bill with cash. As a result, Benson testified that she decided to go across the street to her bank to obtain cash for her bill. Instead of walking across the street to her bank, Benson decided to drive her car, which was still parked outside The Tint Shop's second service bay. Upon reaching her car, Benson opened the door but could not find her car keys. Benson asked the employee who worked on her car where her keys were, and the employee in turn asked Rather, the owner, where the keys were. Benson stated that Rather was working on a car in the first service bay, and she testified that Rather pointed to the back wall of the service-bay area.

¶4.     According to Benson, neither Rather nor the employee moved to retrieve her keys. However, Rather testified that he stopped working on the car in the first service bay to get Benson's keys for her. Rather further stated that, because he was on the other side of the vehicle in the first service bay, Benson must not have seen him stop his work and move toward her keys. Benson testified that she entered the second service bay to retrieve the keys

2

herself from the location where Rather indicated.

¶5.     Benson stated that she was not looking at the floor as she walked through the service bay to retrieve her keys.  Furthermore, although Rather testified that signs were posted inside the service bay to prohibit entry by anyone except employees, Benson stated that she noticed no such signs.  While walking through the service-bay area, Benson tripped on a concrete lip jutting from the threshold of a doorway between the two service bays.  As a result of her fall, Benson broke her hip.

¶6.     Contrary to Benson's testimony, Rather testified in his deposition that he retrieved Benson's car keys and was bringing them out to her when he realized that she had entered the service bay and tripped over the concrete lip.  Rather confirmed that customers were not allowed inside or invited into the service-bay area.  Rather stated that signs were posted inside the service bays to deter unauthorized entry.  However, Rather also admitted that no physical barrier prevented customers, such as Benson, from entering the area and that there were no warning signs posted outside the service-bay area.  Rather further testified that he had painted both the floor of the service bay and the concrete lip that Benson stumbled over the same shade of gray.

¶7.     On August 26, 2013, Benson filed a complaint against the Defendants, asserting that their negligence proximately caused her fall.  Benson claimed that, at the time of her injury, she was a business invitee on the Defendants' premises.  Benson further argued that the concrete lip she tripped over was a dangerous condition and that the Defendants acted negligently by failing to keep the premises in a reasonably safe condition and to warn of the

3

dangerous condition.

¶8.    On July 28, 2014, Rather filed a motion for summary judgment. To support his summary-judgment motion, Rather asserted the following arguments: (1) at the time Benson fell, she was in an area unauthorized for customers; (2) at most, Benson was a licensee on the property, and she failed to show any evidence that Rather engaged in willful or wanton conduct that caused her injury; (3) the concrete lip Benson tripped on was not an unreasonably dangerous condition; and (4) as the lessee of the property, Rather possessed no duty or authority under the lease agreement to alter or maintain the concrete lip. Vicksburg Printing also filed a motion for summary judgment and asserted similar arguments to those raised by Rather.

¶9.    On November 21, 2014, the circuit court entered an order granting summary judgment to the Defendants. Although the circuit court found that Benson retained her status as a business invitee at the time of her fall, the circuit court concluded that Benson failed to prove that an unreasonably dangerous condition existed; that the Defendants acted negligently and caused her injuries; and that the Defendants had actual or constructive notice of an unreasonably dangerous condition.[1] As a result, the circuit court granted summary judgment to the Defendants. Aggrieved by the circuit court's ruling, Benson appeals.

**STANDARD OF REVIEW**

¶10.    With regard to the applicable standard of review, this Court has previously stated:

---

[1] In granting summary judgment, the circuit court cited *Dickinson v. Vanderburg*, 141 So. 3d 455, 458 (¶10) (Miss. Ct. App. 2014), for the proposition that a raised threshold fails to constitute an unreasonably dangerous condition.

In considering a trial court's grant of a motion for summary judgment, this Court conducts a de novo review and examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The Mississippi Supreme Court recently clarified the summary-judgment standard, explaining that the movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to a judgment as a matter of law. The supreme court further stated that the movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where he would bear the burden of proof at trial. Specifically, in premises-liability cases, Mississippi law further requires that[,] when a dangerous condition exists that was created by someone not associated with the business, the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it. The supreme court again clarified that[,] while defendants carry the initial burden of persuading the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, the plaintiff carries the burden of producing sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial.

*Dickinson v. Vanderburg*, 141 So. 3d 455, 457 (¶4) (Miss. Ct. App. 2014) (internal citations and quotation marks omitted).

## DISCUSSION

¶11. On appeal, Benson asserts that genuine issues of material fact remain in dispute. As a result, she contends that the circuit court erred by granting summary judgment to the Defendants. Benson therefore asks this Court to reverse the circuit court's grant of summary judgment and to remand the matter for a jury trial.

### A. Premises Liability

¶12. "[P]remises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of 'conditions or activities' on the

5

land . . . ." *Doe v. Jameson Inn Inc.*, 56 So. 3d 549, 553 (¶11) (Miss. 2011). Benson argues that the raised threshold upon which she tripped—the concrete lip jutting from the floor of the doorway between the two service bays—created an unreasonably dangerous condition. To recover under her theory of premises liability, Benson must prove the following: "(a) the duty owed to [her] by [the Defendants]; (b) a breach of that duty; (c) damages; and (d) a causal connection between the breach and the damages, such that the breach is the proximate cause of [Benson's] injuries." *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶11) (Miss. 2011) (citation omitted).

¶13.    Mississippi uses a three-step process to analyze questions of premises liability. *Dickinson*, 141 So. 3d at 457 (¶6). "First, we must determine whether the injured party was an invitee, licensee, or a trespasser at the time of the injury. Next, we must determine what duty was owed to the injured party by the business owner/operator. Finally, we must determine whether that duty was breached." *Id.* (quoting *Rod v. Home Depot USA Inc.*, 931 So. 2d 692, 694 (¶9) (Miss. Ct. App. 2006)).

¶14.    Mississippi caselaw provides the following guidance:

> An invitee is a person who enters the premises of another in response to an express or implied invitation of the owner or occupant for their mutual advantage. A licensee enters the premises for his own convenience, pleasure, or benefit pursuant to the license or implied permission. A trespasser enters the premises without license, invitation, or other right.
>
> Under Mississippi law, a property owner is not the insurer of an invitee's safety. Rather, he owes a duty to the invitee to keep the premises reasonably safe and, when not reasonably safe, to warn only of hidden dangers not in plain and open view. Also, the duty owed to a licensee or trespasser is the same—not to willfully or wantonly injure such person.

6

*Double Quick Inc.*, 73 So. 3d at 1166 (¶¶12-13) (internal citations and quotation marks omitted).

¶15.    In the present case, the parties agreed that Benson was an invitee when she originally entered The Tint Shop.  However, the record reflects that the Defendants argued before the circuit court that, at the time of her injury, Benson had exceeded the scope of her invitation by voluntarily entering the service-bay area from outside the shop without permission or authorization.  The record reflects that Benson did not enter the service-bay area from the interior of The Tint Shop, which included the company's office and customer waiting room. Instead, she exited the building and then entered the service-bay area from where her car was parked outside the second service bay.

¶16.    In their argument before the circuit court, the Defendants asserted that Benson's actions changed her status from an invitee to a trespasser or, at most, a licensee.  In response, Benson claimed that she entered the service bay for the mutual benefit of herself and The Tint Shop.  Benson argued that she only entered the service-bay area to retrieve her car keys so she could drive to the credit union and withdraw cash for her bill.  As a result, Benson asserted that she maintained her status as an invitee.

¶17.    After considering the parties' arguments on the issue, the circuit court found that, at the time of her fall, Benson retained her status as an invitee.[2]  We recognize that, "where the

_____

[2] In its appellate brief, Vicksburg Printing asserts an argument that Benson was not an invitee at the time of her fall.  In response, Benson filed a motion before this Court on appeal to strike that portion of Vicksburg Printing's brief because the company filed no cross-appeal of the circuit court's finding that Benson was, in fact, an invitee at the time of her fall.  Benson also filed a supplemental appellate reply brief addressing the issue in the event this Court denied her motion to strike.  Upon review, we deny as moot Benson's

facts of the case are not largely in dispute, the classification of a plaintiff becomes a question of law for the trial judge." *Doe*, 56 So. 3d at 554 (¶13) (citations omitted). In determining Benson's status, the circuit court stated:

> [H]ad there been warning signs on the outside of the building advising patrons not to enter the service area, or had there been a chain or rope or some other barrier prohibiting patrons from entering the service[-]bay area, or even if there had been a sign or notice posted in the office waiting room, there might be sufficient evidence to warrant Benson having lost her status as a business invitee. This [c]ourt, however, finds that[,] lacking such evidence[,] . . . Benson did not lose her status as [a] business invitee in this case.

¶18. Despite finding that Benson was an invitee at the time of her injury, the circuit court found that Benson failed to prove the Defendants breached their duty to her because she failed to prove an unreasonably dangerous condition. To meet her burden of proof, Benson needed to establish one of the following: "(1) a negligent act by the defendant caused the plaintiff's injury; . . . (2) [the] defendant had actual knowledge of a dangerous condition, but [he] failed to warn the plaintiff of the danger; or . . . (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶5) (Miss. Ct. App. 2003) (citations omitted). "Proof merely of the occurrence of a fall on a floor within [the] business premises is insufficient to show negligence on the part of the proprietor. Proof that the floor on which the fall occurred had present thereon litter and debris is similarly insufficient." *Id.* at (¶6) (citation omitted).

¶19. According to Benson, the raised threshold upon which she tripped—the concrete lip rising less than two and a half inches from the floor of the doorway separating the two

motion to strike since we affirm the circuit court's finding that Benson retained her status as an invitee at the time of her fall.

automechanic service bays—created an unreasonably dangerous condition. However, the circuit court concluded that Benson failed to produce any proof that an unreasonably dangerous condition existed. Furthermore, the circuit court cited this Court's opinion in *Dickinson* for the circuit court's determination that, in Mississippi, thresholds fail to constitute an unreasonably dangerous condition. *See Dickinson*, 141 So. 3d at 458 (¶10).

¶20. Like Benson, the plaintiff in *Dickinson* asserted an argument as to the dangerousness of a raised threshold. *Id.* at 457 (¶5). Dickinson tripped on the raised threshold as she was entering a local business. *Id.* at 456 (¶1). Dickinson argued on appeal that the threshold constituted a dangerous condition because the threshold was about two inches higher than the exterior sidewalk. *Id.* at 458 (¶9). Like the expert Benson presented, Dickinson's expert stated that the threshold constituted an unreasonably dangerous condition that the defendant had a duty to identify and correct. *Id.* Also similar to the facts of the present case, Dickinson's expert contended that the defendant "should have placed signs warning customers of the raised threshold or painted the elevated area a different color to draw attention to the hazard." *Id.*

¶21. In affirming the circuit court's grant of summary judgment to the defendant, the *Dickinson* court stated:

> In *McGovern v. Scarborough*, 566 So. 2d 1225, 1228 (Miss. 1990), the . . . [s]upreme [c]ourt held that a raised threshold was not unreasonably dangerous as a matter of law because the floor itself was at least two inches higher than the exterior walkway. Although the . . . [s]upreme [c]ourt revised the open-and-obvious standard in *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994), by finding that a plaintiff's failure to recognize an open and obvious danger operates to reduce damages, not preclude liability, the result in *McGovern*—that a raised threshold was not unreasonably dangerous—still

9

stands. *See also Wood v. RIH Acquisitions MS II*, 556 F.3d 274, 282 (5th Cir. 2009) ("At least those hazards that are similar to undamaged thresholds, curbs, and steps, which are common architectural features for buildings and parking lots, may properly be found not to be unreasonably dangerous.").

*Dickinson*, 141 So. 3d at 458 (¶10); *see also Trull v. Magnolia Hill LLC*, 171 So. 3d 518, 521 (¶10) (Miss. Ct. App. 2014) ("Mississippi caselaw has consistently held that the existence of slight variations in walkways or thresholds does not constitute a dangerous condition." (citations omitted)).

¶22.     Based on *Dickinson*, the circuit court here concluded that the threshold in this case failed to constitute an unreasonably dangerous condition. Common architectural conditions for a building are not considered unreasonably dangerous conditions. *See Dickinson*, 141 So. 3d at 458 (¶10). Upon review, we agree with the circuit court's determination that no genuine issue of material fact existed as to this issue. As the circuit court acknowledged, our opinion in *Dickinson* clearly reiterates the supreme court's prior holding that a raised threshold is not an unreasonably dangerous condition. *See id.*

¶23.     The record in this case reflects that Benson did not enter The Tint Shop's service-bay area from the interior door connected to the shop's office. Instead, Benson exited the customer-service area inside the building and then entered the service-bay area from outside the building where her car was parked in front of the second service bay. As our opinion in *Dickinson* recognizes, usual dangers that customers normally expect to encounter on a business's premises, such as thresholds, curbs, and steps, fail to constitute unreasonably dangerous conditions. *Id.*; *see also Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶9) (Miss. Ct. App. 2011) ("Mississippi has long recognized that normally encountered

10

dangers such as curves, sidewalks, and steps are not hazardous conditions. Often such pathways contain crack[s] and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." (citations omitted)). Furthermore, "hazards that are similar to undamaged thresholds, curbs, and steps, which are common architectural features for buildings and parking lots, may properly be found not to be unreasonably dangerous." *Wood*, 556 F.3d at 282.

¶24. We find that the threshold feature upon which Benson tripped constituted a common architectural feature for the doorway in an automechanic service bay and fell within that usual and expected hazard that is not unreasonably dangerous. *See Dickinson*, 141 So. 3d at 458 (¶10). Therefore, we find that no genuine issue of material fact remains as to this issue. Accordingly, Benson's argument on this assignment of error lacks merit.

### B. Negligence Per Se

¶25. Benson also asserts that the Defendants were negligent per se because the concrete lip between the two service bays violated the International Building Code (IBC). The Defendants contend that Benson's argument is procedurally barred because Benson failed to plead negligence per se in her complaint. The Defendants further argue that, in determining that the IBC failed to apply to the threshold in this case, the circuit court correctly found no substantive merit to Benson's claim. As the record reflects, the circuit court found no dispute existed that The Tint Shop's building was built prior to 1960 and predated the IBC.

¶26. As a preliminary matter, we address whether Benson is procedurally barred from

arguing on appeal that the Defendants were negligent per se. The supreme court has stated that "[n]egligence per se is a subset of negligence in general, whether it be contributory, comparative or otherwise. Thus, a pleading of negligence . . . would encompass negligence per se." *Snapp v. Harrison*, 699 So. 2d 567, 571 (¶21) (Miss. 1997).

¶27. As reflected in the record, Benson asserted the following in her complaint:

> The unmarked, unpainted, concrete lip, which blended with the surrounding concrete floor, constituted an unreasonable latent, dangerous, and unlawful condition of said area and was caused by both Defendants' negligence, jointly and severally, in failing to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition and/or to warn of the latent, dangerous condition [that] was not readily apparent.

> The concrete lip was part of the structure of the building, which had been there for some time[,] and was known to both Defendants or should have been known to each of them in the exercise of reasonable care.

> As a proximate result of [the] negligence of [the] Defendants, [Benson] suffered bodily injury . . . .

¶28. Upon review, we find that Benson's complaint failed to plead a cause of action asserting that an alleged violation of the IBC constituted negligence or negligence per se. However, while we find that Benson's argument is procedurally barred on appeal, we also acknowledge that the circuit court determined the merits of whether the application of the IBC resulted in negligence per se.

¶29. "Mississippi recognizes the doctrine of negligence per se, which essentially provides that breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care." *Simpson v. Boyd*, 880 So. 2d 1047, 1052 (¶26) (Miss. 2004) (citation omitted). "To prevail in an action for negligence per se, a party must prove that he was a

member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries." *Snapp*, 699 So. 2d at 571 (¶22) (citing *Thomas v. McDonald*, 667 So. 2d 594, 597 (Miss. 1995)). Benson designated Lamar Hawkins, a professional engineer, as her expert, and she provided the circuit court with a sworn affidavit of Hawkins's proposed testimony. As reflected in the record, Hawkins planned to testify that the concrete lip Benson tripped over failed to comply with the IBC, as adopted by the City of Vicksburg (the City), and with the Life Safety Code, as adopted by the Occupational Safety and Health Administration.

¶30. In addressing Benson's negligence per se argument, the circuit court found the following:

> [A]s to the alleged violation of the [IBC], [section] 101.4.5 of the code clearly states that [the IBC] is not applicable to existing structures. There is no dispute that [The Tint Shop's] premises were built prior to 1960. The [IBC,] by its own terms[,] does not apply to existing structures. Existing structures are instead governed by the International Property Maintenance Code [(IPMC)]. . . . Vicksburg Printing further argues that[,] even if the [IBC] did apply, Benson has not shown that she was in the category of persons the [code] section was designed to protect or that she suffered injuries that the code was designed to avoid or that the violation caused Benson's injuries.

¶31. In addition to the circuit court's conclusion that the IBC failed to apply in this case, the record reflects that The Tint Shop also passed regular yearly inspections conducted by the City. Rather testified in his deposition that he had to pass an inspection each year to renew his business license. Rather stated that the City conducted about four different inspections each year and that the inspector actually visited The Tint Shop's premises to perform the inspection. Moreover, Rather testified that he had never been informed of any

13

violations found as a result of the City's inspections.

¶32. Upon review, we find no error in the circuit court's findings that, by its own terms, the IBC failed to apply to structures built prior to 1960 and that, as a result, the IBC failed to apply in this case. The record reflects that Benson therefore failed to raise any dispute of material fact as to her argument that negligence per se resulted from the application of the IBC. Accordingly, we affirm the circuit court's grant of summary judgment to the Defendants.

¶33. **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.**