# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01290-COA

**ANITA COX**                                                          **APPELLANT**

**v.**

**COAST 132 LLC D/B/A ADVENTURES PUB &**                    **APPELLEE**
**SPIRITS**

DATE OF JUDGMENT:          10/25/2023
TRIAL JUDGE:               HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT,
                           SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:    JESSICA MARIE LENNARD
ATTORNEY FOR APPELLEE:     ROBERT ELLIOTT BRIGGS III
NATURE OF THE CASE:        CIVIL - PERSONAL INJURY
DISPOSITION:               AFFIRMED - 04/22/2025
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Anita Cox filed a premises-liability complaint against Coast 132 LLC after slipping

and falling in one of the company's restaurants, Adventures Pub & Spirits ("Adventures").

Adventures filed a motion for summary judgment.  Following a hearing, the circuit court

granted summary judgment in favor of Adventures.  Aggrieved, Cox appeals.  Finding no

error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     On August 17, 2020, Cox visited Adventures in Biloxi, Mississippi.  Approximately

fifteen minutes after arriving, Cox stood from her chair at a high-top table and slipped and

fell to the ground.  Her husband helped her up, and she stayed at Adventures until an

ambulance was called because the pain became too unbearable. The restaurant allegedly informed her that the hospital could send the company a bill for her medical visit, but the hospital refused to do so because it did not accept payments from third parties. Cox claimed that her pain continued without much relief after she arrived home in Georgia.

¶3. On January 26, 2022, Cox filed a complaint in the Harrison County Circuit Court against Coast 132 LLC (doing business as Adventures) and fictitious defendants. The complaint alleged negligence and wantonness and requested all damages, court costs, and attorney's fees to which Cox was entitled, as well as "all compensatory damages that it will take to make [her] fully whole[.]" On May 5, 2022, Adventures filed an answer to the complaint, asserting that Cox's fall was caused by her own negligence and not through any fault of the business.

¶4. Cox's deposition was taken on July 29, 2022. She testified that she was a resident of Georgia and visited Biloxi, Mississippi, a couple of times a year with her husband. She and her husband had visited Adventures "maybe a couple times before." They usually sat at the bar, but on this occasion, they chose a high-top table right next to a large window. Cox was seated closest to the window on the left side of the table. Approximately fifteen minutes after sitting down, Cox attempted to stand to retrieve a different plate. When she rose, she "stepped down from her stool to the left onto what she believed was the floor, but was actually the window sill." Cox slipped and fell, stating that "it felt like when [she] stepped down that maybe [her] foot was on the ledge and [she] couldn't catch [her] balance."

¶5. Cox stated that she hit her back, backside, neck, shoulder, and arm in the fall. Her

2

husband helped her up, and she sat back down in her chair. "[W]ithin two or three minutes [her] arm started hurting really bad, started turning black," and she started "feeling really stiff." Approximately fifteen minutes later, the pain "had gotten to the point to where [she] couldn't deal with it anymore." Cox's husband called an ambulance, and the manager gave them a business card, instructing that "when [they] get over to the emergency room, tell them to bill us." After being examined, the hospital informed Cox they "don't do third party billing"; so she filed the bill with her insurance, and her husband immediately called an attorney. At the time of the deposition, Cox testified that she continued to have problems with her back, hip, leg, neck, and shoulder. She explained that she was seeing a pain management doctor but did not feel it was helping. She also went to physical therapy but believed surgery was going to have to be performed. Cox eventually stopped visiting these doctors because her "insurance visits ran out."

¶6. Both Cox and Adventures had their own experts who performed investigations and prepared detailed reports on their findings. Kevin Vanderbrook, a professional engineer, conducted an inspection of the area of Cox's fall in behalf of Adventures. He found that the windowsill at issue "measured approximately 87 inches wide and 21.5 inches deep" and had a "2 inch metal pipe mounted to the walls across the window to prevent persons from bumping into the large window opening." He concluded "that the area of the fall does not constitute an unreasonable risk of harm or hazard," and the windowsill was "an open and obvious transition between the floor[.]" Vanderbrook further concluded, after watching video footage of Cox in Adventures the day of her fall, that Cox "obviously stepped up on

3

the windowsill at some point" because the recording showed Cox "was standing on the sill prior to her fall."

¶7.    Richard Hughes, the engineering expert retained by Cox, found that Adventures' building was in violation of the International Building Code (IBC). He also stated that "[p]eople watch where they are going[,] not where they are walking[,]" and concluded the windowsill "did not have sufficient color or contrast to draw Ms. Cox's primary field of view toward her peripheral" vision. Hughes did not explicitly conclude that the windowsill was a dangerous condition.

¶8.    Vanderbrook reviewed Hughes's report and sent a letter of commentary to Adventures, stating that the provision of the IBC allegedly violated referred to "means of egress" in the sense of providing "safe circumstances for persons exiting buildings during emergency conditions" and included things like stairs or "tripping hazards." In other words, the window did not count as a "means of egress" here; further, even if it did qualify as such, Vanderbrook stated the window "does not provide access to the exterior of the building," so the IBC would remain inapplicable. Vanderbrook wholly stated that Hughes's opinion was "a complete misinterpretation and misapplication" of the IBC.

¶9.    On June 21, 2023, Adventures filed a motion for summary judgment with nine exhibits attached, including photographs, Cox's deposition, investigative reports, and an affidavit from the owner. Adventures asserted in its motion that Cox failed to prove a dangerous condition existed, and even if a dangerous condition existed, Adventures neither created the condition nor had actual or constructive knowledge of it. On June 30, 2023, Cox

4

filed a response opposing Adventures' motion for summary judgment, attaching the same exhibits in addition to Adventures' discovery responses. On July 6, 2023, Adventures filed a reply to Cox's response.

¶10. On July 27, 2023, the circuit court conducted a hearing on the motion for summary judgment. Adventures argued that the windowsill did not constitute a dangerous condition, Cox had not been paying attention at the time of her fall, and Hughes "never looked at the place" or "took any photographs or measurements" in performing his assessment. Further, Adventures stated the IBC was not applicable to a building constructed before 1960. Cox, on the other hand, largely contended this dispute was a battle of the experts and, accordingly, should be presented before a jury.

¶11. On October 25, 2023, the circuit court granted Adventures' motion for summary judgment and filed an accompanying opinion. The court held that Hughes's report stating there was an IBC violation was insufficient to prove a dangerous condition, and "[i]n any event, the IBC does not apply to this structure because it was built in the 1950s." The court found Vanderbrook's report declaring the condition was not unreasonably dangerous was in line with Mississippi law. The court also found that the windowsill could not be the proximate cause of Cox's injuries because she did not "pay a reasonable amount of care and attention while traversing an area." Finally, the court found no proof that Adventures had actual or constructive knowledge of the allegedly dangerous condition because the "building was constructed in the 1950s," and Adventures had "occupied the building for seven years prior to Cox's fall." Namely, the court noted that "thousands of customers sat at the table

5

located next to the window/windowsill at issue in the years that Adventures had been open and operating." The court further noted that the order should not be construed as "prefer[ring] one expert over another" but, rather, as concluding Hughes simply did not "establish a genuine issue of material fact under Mississippi law." On November 27, 2023, Cox appealed.

**STANDARD OF REVIEW**

¶12. "When we review a trial court's grant of summary judgment, our standard of review is de novo[.]" *Miller v. R.B. Wall Oil Co.*, 970 So. 2d 127, 130 (¶6) (Miss. 2007) (citing *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 398 (Miss. 2006)). "[W]e must confine our review to what appears in the record." *Id.* (quoting *Pulphus v. State*, 782 So. 2d 1220, 1224 (Miss. 2001)).

**ANALYSIS**

¶13. In a negligence action, this Court must first determine what, if any, duty was owed by the business to the injured party. Here, neither party disputes that Cox was an invitee, a person who "enters the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Cheeks v. AutoZone Inc.*, 154 So. 3d 817, 822 (¶20) (Miss. 2014) (quoting *Thomas v. Columbia Group LLC*, 969 So. 2d 849, 852 (Miss. 2007)). "An owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Robinson v. Ratliff*, 757 So. 2d 1098, 1101 (¶8)

6

(Miss. Ct. App. 2000) (quoting *Fulton v. Robinson Ind.*, 664 So. 2d 170, 175 (Miss. 1995)).

¶14.    "To succeed in a premises-liability claim, the plaintiff must show: (1) a negligent act by the defendant caused the plaintiff's injury; or, (2) that the defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Walz v. HWCC-Tunica Inc.*, 186 So. 3d 375, 377 (¶9) (Miss. Ct. App. 2016) (quoting *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶5) (Miss. Ct. App. 2003)).    "Each of these premises-liability claims **requires** that the party show a dangerous condition existed." *Id.* (emphasis added) (citing *Garson v. Circus Circus Miss. Inc.*, 135 So. 3d 932, 934 (¶9) (Miss. Ct. App. 2014)).

¶15.    We first address whether this case involved a "dangerous condition." In another case, a plaintiff was injured while entering the defendant's business and alleged that the raised threshold in the entrance constituted a dangerous condition. *Benson v. Rather*, 211 So. 3d 748, 752 (¶12) (Miss. Ct. App. 2016). The trial court granted summary judgment, and this Court affirmed, holding:

> Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions. Often such pathways contain crack[s] and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects. **Furthermore, hazards that are similar to undamaged thresholds, curbs, and steps [such as a window], which are common architectural features for buildings and parking lots, may properly be found not to be unreasonably dangerous.**

*Id.* at 755 (¶23) (emphasis added) (quoting *Wood v. RIH Acquisitions MS II LLC*, 556 F.3d 274, 282 (5th Cir. 2009)). Additionally, "[c]ommon architectural conditions for a building

7

are not considered unreasonably dangerous conditions." *Id.* at 754 (¶22) (citing *Dickinson v. Vanderburg*, 141 So. 3d 455, 458 (¶10) (Miss. Ct. App. 2014)).

¶16.    In the instant case, Cox claims that the raised windowsill next to her table at Adventures was an inherently dangerous condition. However, as the circuit court noted, Cox failed to bring forth any proof that the condition had ever posed a danger in the past. In the seven years Adventures had been in business at that location, no other customer had reported a problem with the windowsill. The inspection Vanderbrook (Adventures' expert) performed did not show a dangerous condition, and Hughes (Cox's expert) merely reported that the windowsill was not in conformity with the IBC. Crucially, that opinion does nothing to establish the presence of a dangerous condition, as Mississippi caselaw is clear that normally encountered "architectural conditions," such as the window at issue in this case, are not dangerous conditions. *Carroll v. Singing River LLC*, 309 So. 3d 567, 571 (¶¶9-10) (Miss. Ct. App. 2020) (recognizing that the supreme court has held that "even an elevation difference as great as seven and one-half inches between a sidewalk and a parking lot failed to constitute a condition that would cause the owner of the business to reasonably anticipate that one would fall or trip over the curb to the sidewalk where the condition was not inherently dangerous and was obvious, open, and apparent to persons going into the store" (quoting *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 477 (Miss. 1967) ("The defendant, as the occupier of the premises in question, was not liable to plaintiff[-]invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant[,] . . . [and] if the plaintiff was aware of the condition, or it was

8

such that she must have been conscious of it and of the consequences of disregarding it, she cannot recover."))).

¶17. Further, the record supports that a violation of the IBC does not apply to "structures built prior to 1960[,]" *see supra* ¶10, and, thus, does not apply to Adventures' place of business. *Benson*, 211 So. 3d at 756 (¶32). Regardless, Vanderbrook addressed the alleged IBC violation and stated that even if Adventures' building were subject to its provisions, the provision Hughes alleged was violated was not applicable to a windowsill, *see supra* ¶8. When we analyze the facts of the present case against the relevant Mississippi caselaw, it clearly establishes that Adventures is entitled to summary judgment. Cox simply cannot establish that the window at issue in this case constitutes a dangerous condition.

¶18. Even if the window could be considered a dangerous condition, Cox provided no evidence that Adventures created the condition. Cox cites *St. Dominic-Jackson Mem'l Hospital v. Martin*, 386 So. 3d 359, 366 (¶¶24-26) (Miss. 2024), to contend that "a genuine issue of material fact exists as to the presence of a dangerous condition where there are additional factors combined with the presence of commonly encountered features." But Cox puts forth no proof that there were any additional factors to consider concerning the "dangerous" windowsill other than the placement of the table next to it. Further, the circuit court pointed out in the order for summary judgment, "[I]t is undisputed that this building was constructed in the 1950s and that Adventures moved into the building in 2013." Cox does not contest either of these facts. Adventures was simply not responsible for creating a dangerous condition even if the windowsill could be categorized as one.

¶19. Without evidence that Adventures created the allegedly dangerous condition, Cox would have to prove that Adventures had actual or constructive knowledge of a danger. As fully outlined and explained above, there is simply no evidence in this record to establish either actual or constructive knowledge by Adventures of any dangerous condition in the area where Cox fell. "Thousands" of customers had sat in the same seat as Cox and did not report any problems over the seven years Adventures had been open. It would thus require conjecture and speculation to conclude that Adventures was aware of any problem, and Mississippi appellate courts have been clear that conjecture and speculation about the premises owner's knowledge are insufficient to sustain the plaintiff's burden of proof. *See Young v. Wendy's Int'l Inc.*, 840 So. 2d 782, 784 (¶6) (Miss. Ct. App. 2003) (A plaintiff must be able to "show that the party charged is the party actually responsible for the wrong, with reasonable certainty or definiteness," and "it is not enough that this shall be left to conjecture or to inferences so loose that it cannot be dependently told where conjecture ceases and cogent inferences begins.") (citing *Berry v. Brunt*, 252 Miss. 194, 172 So. 2d 398, 401 (1965)).

## CONCLUSION

¶20. This Court finds summary judgment in favor of Adventures was proper because the case presented no genuine issue of material fact. The windowsill was not a dangerous condition as required for a premises-liability claim. *See Walz*, 186 So. 3d at 377 (¶9) (citing *Garson*, 135 So. 3d at 934 (¶9)). Regardless, Cox was unable to prove any of the theories for premises liability. *See id.* (quoting *Byrne*, 877 So. 2d at 465 (¶5)). Therefore, we affirm.

10

¶21.    **AFFIRMED.**

      **BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.  WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**